A95A0994. GRIER v. THE STATE.
(463 SE2d 130)

McMURRAY, Presiding Judge.

Defendant was charged in separate indictments with battery, terroristic threats, and false imprisonment. The evidence adduced at his jury trial showed that defendant is the father of the 18-year-old victim's baby. On December 22, 1993, defendant came to the victim's home and ordered her to get her "[expletive] together." She was afraid if she did not comply, "he was going to jump on me there." The victim told several of defendant's cousins who were present "that [she] didn't want to go with [him, . . . but they] didn't [help or] say nothing [sic]." Defendant was angry because the victim had written him "a Dear John letter and he said before he let anybody have me, he said he would kill me." Defendant took the victim and their baby to his mother's house. There, he reviled her in a "[h]ateful tone." In order to "[e]at or anything, use the bathroom[, . . . defendant] told [her that she] had to ask permission." Defendant ordered the victim to bathe and made her sit in the tub for "four or five hours." After defendant allowed the victim to dress, he ordered her up to the bedroom. The victim then explained: "That's when all of it started. He started asking me questions and all that[, . . . such as] who all the men that I have while he was locked up. And if I didn't answer, there was a lick, you know, he hit." Defendant struck the victim repeatedly in the face and across the head with a wooden plank or paddle. The victim did not leave the house when left alone because she was "afraid that he was going to find me and going to kill me." On December 27, 1993, the victim finally left the house with a friend who

took her to the hospital. The victim confirmed that from December 22 to December 27, not "a day went by that [she was] not hit by [defendant]."

Susan Prather, the triage nurse at the hospital, recalled that the victim was trembling and shaking, and also "remember[ed] bruising on [the victim's] forehead and her face." Lieutenant Craig Treadwell of the Covington Police Department interviewed defendant and related the substance of defendant's custodial statement. There, defendant agreed that he made the victim "apologize to his mother for disgracing his mother and him." He denied striking the victim, explaining that "she fell trying to stay out of his way, that she knew to stay out of his way and she fell and hit her head on the bed and that's how she sustained her injuries."

The jury acquitted defendant of terroristic threats but found him guilty of both battery and false imprisonment. This direct appeal followed. *Held*:

1. In his first and third enumerations, defendant challenges the sufficiency of the evidence to sustain his conviction for false imprisonment. He argues that the victim's testimony was repeatedly impeached and contradicted and is so "rife with inconsistencies that no reasonable jury should have believed the State had proven the elements of false imprisonment."

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant (defendant here) no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204); *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381). "Conflicts in the testimony of the witnesses, including the [S]tate's witnesses, is a matter of credibility for the jury to resolve. [Cits.] As long as there is some [competent] evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, the jury's verdict will be upheld. [Cit.]" *Searcy v. State*, 236 Ga. 789, 790 (225 SE2d 311).

"A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). In the case sub judice, the jury was authorized to conclude that defendant unlawfully detained the victim over five days during which period the victim's will was overborne by her fear of the brutal beatings she sustained day and night at defendant's hands. The evidence is sufficient to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, of false imprisonment as alleged in the indictment.

*Grissom v. State,* 187 Ga. App. 653 (1), 654 (371 SE2d 137). It follows that the trial court correctly denied defendant's motion for directed verdict as to the charge of false imprisonment. *McKenzie v. State,* 187 Ga. App. 840 (1) (371 SE2d 869).

2. Defendant enumerates the admission of testimony by Sabrina Pridgett, defendant's former girl friend, that defendant similarly beat her and held her in his apartment against her will in April 1989. He argues "the evidence did not sufficiently establish that [defendant] committed the independent act. Rather, [to defendant] it appears that the State's witness fabricated the story about being held in [defendant's] apartment to excuse her own conduct, [i.e.,] keeping [defendant's] baby from law enforcement and social workers."

Sabrina Pridgett testified that when she was approximately 18 years old, defendant took her and her baby (fathered by defendant) from the home of Sabrina Pridgett's mother and brought them to his apartment, where they argued and fought "about three days." Defendant hit Sabrina Pridgett in the eye "[w]ith his fist." Sabrina Pridgett did not feel free to leave while defendant was awake "because we were fighting." On April 18, 1989, Lt. Treadwell searched defendant's apartment pursuant to a warrant and found Sabrina Pridgett and the child with defendant. "The Department of Family and Children Services removed the child. And [Lt. Treadwell] let Ms. Pridgett leave and go back to her mother's. . . . She had an injury to the eye, [and] also she seemed to be glad to see us [the police], glad we were there to get her out of the apartment."

" 'In order for a similar transaction to be admissible, it is not required that the transaction resulted in a conviction. (Cit.)' *Tilley v. State,* 197 Ga. App. 97, 98 (2) (397 SE2d 506) (1990)." *Sartin v. State,* 203 Ga. App. 293, 295 (3), 296 (3) (b) (416 SE2d 572). In the case sub judice, Sabrina Pridgett's testimony was substantially corroborated by Lt. Treadwell and was sufficient to authorize the trial court's determination that the proffered similar transaction in fact occurred and that defendant was the actor. The trial court did not err in admitting her evidence for the limited purpose of showing defendant's course of conduct and bent of mind.

3. Defendant contends the trial court impermissibly commented on the evidence during a recharge to the jury on the definition of false imprisonment, by the following language: "I have just defined it for you. I mean that's all I can do is define it for you and then you apply the facts to that law and you determine whether false imprisonment occurred. You find the facts as you find the evidence warrants. That's the best I can do for you. The law is not going to change is what I'm saying. *All the facts are there.*" (Emphasis supplied.) Although error is assigned to the emphasized portion of the court's explanation, we conclude that this ground for objection was not preserved for appel-

late review.

"The present rule is that the question of whether OCGA § 17-8-57 has been violated is not reached unless an objection or motion for mistrial is made. In the case sub judice, defendant [reserved his exceptions to the substance of the recharge but] did not object or move for a mistrial when the trial court used the [explanatory terms complained of on appeal]. Consequently, defendant failed to preserve for appellate review any alleged violation of OCGA § 17-8-57." (Citations and punctuation omitted.) *Cornelius v. State*, 213 Ga. App. 766, 770 (3) (445 SE2d 800).

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED OCTOBER 3, 1995.

*Steven A. Hathorn*, for appellant.

*Alan A. Cook, District Attorney, W. Kendall Wynne, Jr., Assistant District Attorney*, for appellee.