## A97A0697. DAVIS v. THE STATE.
## A97A0698. DAVIS v. THE STATE.
## A97A0699. RONALD DAVIS LOGGING COMPANY, INC. v. THE STATE.
### (484 SE2d 284)

ELDRIDGE, Judge.

Out of Upson County comes the case sub judice involving appellant Ronald Davis; his son, appellant Danny Davis; and their company, appellant Ronald Davis Logging Company, Inc. Appellants were charged in a single indictment with numerous offenses of theft by taking and conspiracy to commit theft by taking through various alleged schemes to defraud landowners and lumber companies of timber and monies.[1] Appellants were tried together during a four-week jury trial which resulted in five volumes of record; twelve volumes of exhibits; twenty-five volumes of transcript; acquittal on fifteen counts of the indictment; the conviction of Ronald Davis on two counts of conspiracy to commit theft by taking under Counts 7 and 8 and one count of theft by taking under Count 21; the conviction of Danny Davis on two counts of conspiracy to commit theft by taking under Counts 7 and 8; the conviction of the company on two counts of theft by taking under Counts 15 and 19 and one count of conspiracy under Count 7; and similar concurrent first-offender probationary sentences for each appellant with fines imposed thereon.[2]

All appeal, raising the same eight enumerations of error, with the addition of a sufficiency of the evidence challenge on behalf of appellant Ronald Davis pursuant to his conviction for theft by taking and an additional sufficiency of the evidence challenge as to Counts 15 and 19 raised by appellant Ronald Davis Logging. We affirm.

### Case No. A97A0697

1. Appellant Ronald Davis asserts that the evidence was insufficient to support his conviction for theft by taking under Count 21 of the indictment.

The evidence as it relates to Count 21 demonstrates that Ronald Davis signed a timber lease with victim Keadle Lumber Enterprises ("Keadle") in which appellant claimed title to the timber on "[a]pproximately 100 acres in Land Lot 185 of the 1st Land District

---

[1] This case is one of several related cases that have come before this Court over the last few years as a result of an investigation of alleged timber fraud in Upson and surrounding counties. See, e.g., *Grant v. State*, 220 Ga. App. 604 (469 SE2d 826) (1996); *Raines v. State*, 219 Ga. App. 893 (467 SE2d 217) (1996); *Fletcher v. State*, 213 Ga. App. 401 (445 SE2d 279) (1994); *State v. Adams*, 209 Ga. App. 141 (433 SE2d 355) (1993).

[2] The trial court dismissed one count prior to trial and dismissed two additional counts pursuant to motion after trial had commenced.

. . . [b]ounded on the West by Fincherville Road," otherwise referred to as the Davis-Cole tract, and purported to deed that timber to Keadle in this conveyance. Appellant accepted and cashed a check from Keadle in the amount of $21,500 for the rights under the lease to the timber on the Davis-Cole tract. The state's evidence showed that there was no 100-acre tract in Land Lot 185, and appellant had never been conveyed title to any timber in that land lot fitting the legal description in the deed. Evidence was introduced which raised the inference that the timber which was credited as coming from the Davis-Cole tract pursuant to the timber lease was, in fact, cut from tracts already owned by Keadle. Thus, a rational trier of fact could have found appellant guilty beyond a reasonable doubt of the offense for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Appellant contends that any discrepancies in the timber lease he signed with Keadle were the result of a typographical error in the lease description as to where the 100-acre tract was located. However, the jury heard and rejected this contention. The task of this Court is not to go behind the jury's verdict and re-weigh the evidence, but to determine if sufficient evidence was presented to support the verdict. *Sheats v. State*, 210 Ga. App. 622 (436 SE2d 796) (1993). It was.

### Case No. A97A0699

2. Appellant Ronald Davis Logging challenges the sufficiency of the evidence to support its conviction on Counts 15 and 19 for the offenses of theft by taking in that appellant aided and abetted others in the theft of lumber from Keadle by cutting timber off of the Grant-Ham tract, to which Keadle owned the timber rights, and representing that this wood was removed from the Adams-Wright tract under Count 15 and the KAP-Alfred Leppert tract under Count 19; appellant then sold Keadle's own wood back to Keadle.

A corporation may be prosecuted for an act or omission constituting a crime if an agent of the corporation performs the conduct which is an element of the crime while acting within the scope of his office or employment and in behalf of the corporation; or if the commission of the crime is authorized, requested, commanded, performed, or recklessly tolerated by the board of directors or by a managerial official acting within the scope of his employment on behalf of the corporation. OCGA § 16-2-22 (a) (1), (2).

With regard to these counts, the evidence demonstrated that appellants Ronald Davis and Danny Davis, owners of Ronald Davis Logging, knew from which tract they were cutting while in the performance of their business and kept a logbook in which they specifi-

cally recorded the tracts from which they had cut wood. It was the loggers' responsibility to tell the scale operator from which tract a load had been cut. Appellants, while engaging in the business, knew that wood they had cut from Keadle's Grant-Ham tract was wrongly credited to Adams-Wright and KAP-Alfred Leppert upon delivery by Ronald Davis Logging to Keadle; appellants knew that the miscrediting of the wood was done in order to cover timber shortfalls in cuts on both Adams-Wright and KAP-Alfred Leppert. Appellants accepted payment in the form of pulpwood from Joe Garrard[3] to cover the difference in hauling miles between the tract from which they really cut the wood, Grant-Ham, and the tracts to which they credited the wood, Adams-Wright and KAP-Alfred Leppert. As such, we find the evidence was sufficient for a rational trier of fact to have found appellant Ronald Davis Logging guilty of theft by taking under Counts 15 and 19 based upon the conduct of its principals while acting on behalf of the appellant corporation. *Jackson v. Virginia,* supra; OCGA § 16-2-22 (a) (1), (2).

### *Case Nos. A97A0697; A97A0698; A97A0699*

3. In the next enumeration of error, appellants contend that the state failed to prove that venue was properly in Upson County as to Counts 7 and 8 of the indictment, conspiracy to commit theft by taking. These counts alleged that appellants harvested timber that did not belong to them from two different tracts, one in Monroe County and one in Butts County. Appellants allegedly delivered the wood to a timber mill in Bibb County and then delivered the original load tickets and resulting weight tickets to the purchaser's office in Thomaston, Upson County, for payment on the load.

"Venue is a question to be decided by the jury and its decision will not be set aside as long as there is any evidence to support it." (Citations and punctuation omitted.) *Jones v. State,* 245 Ga. 592, 596 (2) (266 SE2d 201) (1980). Venue may be proved by either direct or circumstantial evidence, and "[i]t is well recognized in this state that slight evidence is sufficient to establish venue, where there is no conflicting evidence." (Citations and punctuation omitted.) Id.; *Levitt v. State,* 201 Ga. App. 63 (410 SE2d 170) (1991). "Venue in a conspiracy prosecution is properly laid either in the jurisdiction where the conspiracy was formed or in any jurisdiction wherein a conspirator committed an overt act in furtherance of the conspiracy." *Brown v. State,* 177 Ga. App. 284, 287 (2) (339 SE2d 332) (1985).

---

[3] Joe Garrard was indicted separately for his alleged participation in the theft of Keadle's timber and was alleged as an unindicted party to the crime under Counts 15 and 19 in the instant case.

A review of the record in relation to Counts 7 and 8 demonstrates that before payment could be had from the purchaser, Mead Coated Board ("Mead"), the load tickets and resulting weight tickets had to be delivered to Mead's Upson County office. While appellants testified that they did not know how the load tickets referenced in Counts 7 and 8 arrived at the Mead office, appellant Ronald Davis admitted that he "picked up the load tickets most of the time" from his loggers. The bookkeeper for Ronald Davis Logging testified that appellants handled the load and weight tickets; that appellants' loggers would turn their tickets in to appellants, and "they [appellants] figure up those loads on Friday morning." Further testimony established that delivery of load and weight tickets to Mead was often made by logging contractors, like appellants, who would "bring them by my [Upson County] office on Friday morning. . . . He would bring me his hand full of tickets and give them to me." This circumstantial evidence was sufficient to raise the inference that appellants committed the alleged overt act of delivering the load tickets to the Mead office in Upson County in furtherance of the conspiracy as set out in Counts 7 and 8 of the indictment, and for the jury to so find, thereby establishing venue in Upson County. *Brown*, supra at 287.

4. Appellants next challenge the sufficiency of the evidence as to Counts 7 and 8. With regard to Count 7, appellants contend that Joe Garrard, an agent for Keadle, gave appellants the Keadle-owned wood that is the subject of Count 7; some of the wood was allegedly given in exchange for work authorized by Garrard and some in exchange for monies paid by check to Garrard by appellants. With regard to Count 8, appellants contend that Jeff Grant, the owner of the tract referenced in Count 8, gave the timber to appellants if they would "clean it up out there." Thus, appellants do not deny that they took the wood, but seek to justify the taking. Accordingly, the evidence amply demonstrates that appellants knew they were cutting privately owned wood from land that did not belong to them and accepting payment on the loads. The jury in the case sub judice heard the appellants' explanations for these activities and declined to accept them, aided perhaps by the total lack of testimonial or documentary evidence in support of appellants' contentions concerning the largess of both Garrard and Grant, as well as the dearth of cancelled checks evincing any payment for the lumber specifically referenced in either Count 7 or 8. This Court has no authority to disregard the jury's credibility findings with regard to appellants' explanations. *Grier v. State*, 218 Ga. App. 637, 638 (463 SE2d 130) (1995). The evidence was sufficient to support the verdicts. *Jackson v. Virginia*, supra.

5. Next, appellants assert a claim of prosecutorial misconduct. In support thereof, appellants contend that (1) the prosecution supplied

a witness list of over two hundred names, most of whom were not called, although the ones that were likely to be called by the state had been checked off by the prosecutor; (2) the prosecution called a witness whose name was not on the list; (3) the prosecution furnished numerous documents to the defense just prior to trial and failed to furnish documents relating to an ongoing GBI investigation; (4) the prosecutor failed to furnish several documents until two weeks into trial; and (5) the prosecution misled the trial court into believing that an exhibit had been admitted into evidence which had not. Our review of each of the alleged errors enumerated by appellants, in relation to those portions of the transcript cited therefor, fails to demonstrate prosecutorial misconduct. Appellants' claims (1) and (3) above were argued in support of a motion for continuance based on alleged discovery violations, the denial of which motion is not cited as error herein. Nor is error claimed as to the trial court's determination that the state substantially complied with the court's order that all documents relevant to appellants' guilt or innocence should be turned over to the defense. Appellants have not provided a rationale for us to disregard the trial court's finding of substantial compliance, and the record supports the trial court's conclusion. Accordingly, appellants' claim of prosecutorial misconduct based on an alleged failure to turn over documents fails.

Further, appellants sought only to interview the witness referenced in claim (2) above, which request was granted; in addition, appellants made no objection to the state's delivery of the documents referenced in claim (4) above. "The contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct." (Citations and punctuation omitted.) *Williams v. State*, 217 Ga. App. 636, 638 (4) (458 SE2d 671) (1995).

Finally, the exhibit about which appellants complain in claim (5) above was introduced as a court's exhibit upon appellants' insistence, without reference to any "misrepresentation" on the part of the prosecution. Moreover, the comment cited to this Court by appellants as a basis for their assertion that the prosecutor "misled" the trial court regarding the exhibit's evidentiary status was actually a comment made by GBI agent Olinger, not the prosecutor.

A claim of prosecutorial misconduct is a serious charge, and "once appellant raises a charge of prosecutorial misconduct, he 'has the duty to prove it by the record and by legal authority.' [Cits.]" Id. Appellants have failed to demonstrate any manifest intent on the part of the prosecutor to engage in misconduct so as to subvert the judicial process. See *Lobdell v. State*, 256 Ga. 769, 774-775 (353 SE2d 799) (1987). Additionally, appellants have failed to cite any legal authority in support of their specific claims. *Wellons v. State*, 266 Ga. 77 (463 SE2d 868) (1995); *Williams*, 217 Ga. App. at 638. Accord-

ingly, we find this enumeration of error to be without merit.

6. Appellants' next enumeration of error alleges a violation of the rule of sequestration; appellants contend that agent Roy Olinger was permitted to remain in the courtroom and was recalled by the state numerous times, thereby permitting the agent to "reform" his testimony and to comment on the testimony of other witnesses.

Agent Olinger was an investigative officer with the GBI who had been assigned to this case since its 1989 beginnings, which investigation spanned several years and involved numerous defendants, counties, and law enforcement agencies. Prior to trial, the state moved to permit Olinger to remain in the courtroom; the prosecutor stated in his place that Olinger's presence and testimony were essential for the orderly presentation of the evidence in the case sub judice. In addition, the prosecutor explained that because of the complex nature of the case, as well as the number of exhibits, witnesses, and counts, the better course during the state's presentation of evidence would be to break the indictment down into related counts and present all evidence as to the first set of related counts before moving on to the next set; for this reason, agent Olinger was to be recalled several times for testimony in which he would describe the investigation as it pertained to the particular counts being addressed at that time. The trial court agreed with this procedure.

We conclude that "a proper foundation for an exception to the sequestration rule was made, and we find no abuse of discretion by the trial judge in allowing the investigating officer to remain in the court room and in refusing to direct that he be called as the state's first witness." (Citation and punctuation omitted.) *Martin v. State*, 151 Ga. App. 9, 11 (3) (258 SE2d 711) (1979).

Further, appellant has failed to show that the trial court abused its discretion in permitting the agent to be recalled in order to facilitate the orderly presentation of evidence. *Dampier v. State*, 245 Ga. 427 (265 SE2d 565) (1980); *Massey v. State*, 220 Ga. 883 (142 SE2d 832) (1965); *Ratliff v. State*, 150 Ga. App. 695 (258 SE2d 324) (1979). Those cited portions of the agent's testimony which appellants characterize as having been "reformed" or as comments upon the testimony of other witnesses were either: (1) the result of questioning by appellants; (2) comments on what witnesses had said during the investigation, not the trial; or (3) fail to demonstrate any prejudice to appellants so as to illustrate an abuse of the trial court's discretion. Id. at 695-696. There was no error.

7. Appellants contend that the trial court erred in permitting the jury to consider court's Exhibit 3 as this exhibit allegedly contained information which was irrelevant and immaterial, as well as information that was not properly in evidence. The record shows that court's Exhibit 3 related solely to Counts 16 and 17 of the indictment,

upon which counts appellants were found not guilty. Pretermitting error, if any, harm must also be shown affirmatively on the record in order to authorize reversal on appeal. *Robinson v. State*, 212 Ga. App. 613, 616 (442 SE2d 901) (1994). Appellant has failed to make the requisite showings, and this enumeration of error is without merit.

8. Appellants next contend that reversible error occurred when, during the course of the trial, two jurors looked up the meaning of "racketeering" at the Upson County library; appellants contend that "[d]efendants['] counsel did not learn of the misconduct until after trial and sentencing."

Appellants did not learn of this conduct until after trial and sentencing because when the trial court determined that the two jurors should be voir dired for obviously discussing the case while in the jury box, appellants declined to be present at the voir dire and stated in no uncertain terms that "[w]e don't have any complaints with the jury and we don't want to be present in any interview. We think it is inappropriate to interview them." The trial court then interviewed the jurors alone; discovered the enumerated transgression; and determined, after questioning, that no prejudice to the appellants was evident. The two jurors were allowed to remain on the panel. "One cannot complain of trial procedure utilized by the trial court which his own trial tactics or conduct procured or aided in causing." *Williams v. State*, 205 Ga. App. 445, 446 (2) (422 SE2d 309) (1992); *Wilburn v. State*, 199 Ga. App. 667, 668 (2) (405 SE2d 889) (1991). There was no error.

9. Appellants next contend that the foreman of the jury "misled" them when informing the trial court that one juror, Willie Garner, had made up his mind concerning the guilt or innocence of the appellants prior to the beginning of jury deliberation; appellants contend that because of this misleading information, Garner was improperly removed from the panel. In support of this contention, appellants submitted at the motion for new trial an affidavit from Garner in order to demonstrate that he had not, in fact, made up his mind prior to deliberations.

The affidavit of Willie Garner is inadmissible as it serves only to impact on the credibility of the jury foreman and is immaterial since it provides no substantive evidence reflective of the guilt or innocence of appellants so as to produce a different verdict. We will not consider it. *Timberlake v. State*, 246 Ga. 488, 491 (271 SE2d 792) (1980); *Davis v. State*, 221 Ga. App. 375, 377 (471 SE2d 307) (1996).

Moreover, appellants specifically requested that Garner be removed from the jury panel and that an alternate juror take his place; this, without requesting to voir dire Garner. By way of explanation for this professed lapse in judgment, appellants repeatedly assert that they "had endured a five and one-half week trial and

simply wanted the trial over." However, such assertion neither moves this Court which recognizes that judge, jury, et al. "endured" the lengthy proceedings, nor relieves appellants from the requirement to object to a procedure in order to later claim reversible error thereon. *Williams*, 205 Ga. App. at 446. This enumeration of error is waived.

10. Appellants' last contention challenges the admissibility of the prior sworn testimony of appellant Ronald Davis given at the trial of another defendant on related charges, which testimony was read into evidence in the case sub judice. Appellants contend that the introduction of such evidence violated Ronald Davis' right against self-incrimination "pursuant to the Fifth Amendment of the United States Constitution, the Constitution of the State of Georgia, and OCGA §§ 24-9-28 and 24-9-29."[4]

At trial appellant Ronald Davis objected to the testimony about which he now complains because: (1) the state had subpoenaed appellant to the prior trial, although they did not call him; and (2) "there has been no showing that it's [prior testimony] relevant to this trial." Appellant did not claim, as he does herein, a violation of a constitutional or statutory right. "It is well settled that a reason urged by enumeration of error on appeal which is different from that urged below will not be considered for the first time on appeal." *Brantley v. State*, 177 Ga. App. 13, 14 (1) (338 SE2d 694) (1985); see also *Shirley v. State*, 254 Ga. 723 (334 SE2d 154) (1985).

Moreover, even assuming for the sake of argument that these contentions are properly before us, the record shows that appellant Ronald Davis' prior testimony was given voluntarily, under oath, on behalf of the defense, with his defense attorney present. The specific testimony which was read from the transcript of the earlier trial was directly related to the case sub judice and was admissible as an express or implied admission against interest. *Toledo v. State*, 216 Ga. App. 480, 482 (455 SE2d 595) (1995). Such voluntary testimony does not infringe upon appellant's Fifth Amendment right against self-incrimination.

With regard to appellant's contentions concerning OCGA §§ 24-9-28 and 24-9-29, neither a court-ordered immunity granted pursuant to OCGA § 24-9-28 nor the testimonial privilege granted to veterinarians under OCGA § 24-9-29 is a relevant consideration in the case sub judice. Thus, these Code sections aid appellant's argument not at all. There was no error.

*Judgment affirmed. Birdsong, P. J., concurs. Ruffin, J., concurs in judgment only.*

---

[4] Appellants Danny Davis and Ronald Davis Logging do not have standing to claim a violation of Ronald Davis' constitutional right against self-incrimination under the Fifth Amendment.

DECIDED MARCH 6, 1997 —
RECONSIDERATION DENIED MARCH 18, 1997 —

*Ham, Jenkins, Wilson & Wangerin, Phillip B. Ham, Kevin A. Wangerin,* for appellants.

*Michael J. Bowers, Attorney General, Michael E. Hobbs, Deputy Attorney General, Joseph L. Chambers, Patrick D. Deering,* for appellee.