## A98A1755. HOLMAN v. THE STATE.
### (511 SE2d 240)

ANDREWS, Judge.

Juan Holman appeals from the judgment entered after a jury found him guilty of armed robbery. Holman argues the trial court erred in denying his motion for directed verdict of acquittal and for new trial because the evidence was insufficient to support the verdict. Holman also argues the trial court erred in denying his motion to withdraw his plea to voluntary manslaughter and in denying his motion in limine to exclude evidence he claims was prejudicial. Because we find no reversible error, we affirm the judgment of the trial court.

The evidence at trial, viewed in the light most favorable to the verdict, was that on the day in question, four young men drove up to the house where Paul Golden rented a room from William Martin. Three of the men came to the door and rang the bell, while the fourth man stayed in the car. Martin answered the door and the men asked to see Golden. The three men went back to Golden's room and stayed about an hour and left. After the men left, Golden came out of his room and told Martin, "I've been ripped off." After about an hour, the four men came back and again, three came inside and went to Golden's room and one stayed in the car, although this time, they turned the car around in the opposite direction before coming in the house. The men were back there for a long time and Martin became suspicious when he could not hear any sounds coming from Golden's room. Martin went back to Golden's bedroom, knocked on the door and went inside, saying he was going to put in a phone jack. Martin had his gun tucked into the waistband of his pants so that it was vis-

ible when he went into Golden's room. Martin testified that when he went in the room, Golden was sitting on the bed and the three men were sitting in a row against the wall, with Holman sitting next to Golden. Martin was leaning down installing the jack, when he heard a loud popping sound and saw Golden fall over. Martin felt what he thought was the barrel of a gun scraping against his head and batted it away. He then jumped up, pulled out his gun and tried to shoot, but the gun jammed. The three men ran out of the room and out of the house.

On cross-examination, Martin admitted he told police a different story when they questioned him the first time. He said he told them he was in the living room when he heard the shot because he was scared and could not think straight.

The State introduced Holman's statements to police into evidence. In his first statement, Holman said he and three other men went to Martin's house and walked back to Golden's bedroom. While they were in the bedroom, Martin came in and began installing a phone jack. While Martin's back was turned, Jason, one of Holman's co-defendants, took a money clip with some cash in it from the night stand. After Jason took the money, Holman tried to grab Martin's gun and they struggled. During the struggle, the gun went off and Holman ran out of the room.

In Holman's second statement to police, Holman said that C. J., Steve and Jason stole some pot from Golden. They said they were going back to the house because they had seen some money on Golden's dresser. Holman told them he would go with them and gave Jason a .25 caliber semiautomatic gun and also took with him his .32 caliber gun. Holman said the plan was to go back to the house, steal the money and leave. After the robbery, Holman threw the gun away in some woods. Although Holman told detectives where he hid the gun, they were unable to find it. Holman said the part of his first statement in which he said Jason stole the money and the gun went off during the struggle with Martin, was true.

There was also evidence at trial that the bullet that killed Golden did not come from Martin's gun. The medical examiner testified that Golden was killed with a bullet from a .32 caliber gun and the gun was two to three inches from Golden's head when it was fired.

1. Holman argues on appeal that the trial court erred in denying his motion for directed verdict of acquittal because the State failed to prove he was guilty of armed robbery beyond a reasonable doubt. Holman also argues there was no independent evidence in addition to his statement to support a conviction for armed robbery.

The standard of review of the denial of a motion for directed verdict of acquittal is that from *Jackson v. Virginia*, 443 U. S. 307 (99 SC

2781, 61 LE2d 560) (1979). See *Harvey v. State*, 212 Ga. App. 632, 634 (2) (442 SE2d 478) (1994). On appeal, the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine the credibility of witnesses, but only determines whether the evidence is sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Grier v. State*, 218 Ga. App. 637, 638 (463 SE2d 130) (1995). In addition, conflicts in the witnesses' testimony are a matter for a jury to resolve. As long as there is some competent evidence, even though contradicted, on each element necessary to prove the State's case, the jury's verdict will be upheld. *Grier*, supra at 638.

The evidence was sufficient to support the verdict. Contrary to Holman's argument on appeal, an incriminating statement does not need independent corroboration. An incriminating statement is made where the accused, though admitting to damaging circumstances, nonetheless attempts to deny responsibility for the crime charged by putting forward exculpatory or legally justifying facts. It is not required that admissions or incriminating statements be corroborated as must confessions to a crime. *Walsh v. State*, 269 Ga. 427, 429 (499 SE2d 332) (1998); *Plumm v. State*, 201 Ga. App. 154 (410 SE2d 352) (1991). However, since admissions or incriminating statements do not admit every element of the offense charged, the State has the burden of proving some elements of the offense by evidence other than admissions. *Lowe v. State*, 267 Ga. 180, 182 (476 SE2d 583) (1996). The State need not introduce additional elements which corroborate the admissions, but must present additional direct or circumstantial evidence of guilt. *Walsh*, supra at 429.

Here, the jury heard Holman's statement that they planned to go back and rob Golden and that Holman took a .32 caliber gun into the house and also provided one of his co-defendants with a gun. Martin testified that the men came back to see Golden after having been there earlier, and that one of the men stayed in the car, but this time turned it around to face the other way. Martin also testified that he heard a popping sound and saw Golden fall over before the struggle with Holman began. Golden was still sitting on the bed when he was shot, and the medical examiner testified that the gun was two to three inches from Golden's head when it was fired, consistent with the State's theory that Holman held the gun to Golden's head while Jason took the money and then shot him. Martin said there were no other shots fired after he heard the popping sound and saw Golden fall. He also testified that Golden was shot before the men ran out of the room. Accordingly, there was sufficient evidence from which the jury could infer that Holman held Golden at gunpoint and shot him just before or at the same time that his co-defendant Jason took the money. See *Moore v. State*, 233 Ga. 861, 864 (213 SE2d 829) (1975).

2. Next, Holman claims the trial court erred in denying his motion to withdraw his plea to voluntary manslaughter after the court pronounced sentence. Holman contends the plea was not voluntarily and intelligently made because he did not "understand what voluntary manslaughter was."

"After a prisoner raises the question of the validity of his plea of guilty, the burden is on the state to show that the plea was intelligently and voluntarily entered. The state may accomplish this end by two means, (1) showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea; or (2) fill a silent record by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary." *Roberts v. Greenway*, 233 Ga. 473, 475 (211 SE2d 764) (1975). Whether to allow the withdrawal of a voluntarily, intelligently entered guilty plea after the pronouncement of sentence is within the sound discretion of the trial court. *State v. Germany*, 246 Ga. 455, 456 (271 SE2d 851) (1980).

Here, when the court took the plea for voluntary manslaughter, the prosecutor outlined the State's case against Holman for Golden's murder, and the court asked Holman a series of questions, including: whether his lawyer had explained the charges against him; whether he understood the rights he was giving up by pleading guilty; and, whether he had a chance to thoroughly discuss his case with his lawyer. Holman answered yes to all these questions.

Therefore, the record shows that when Holman entered the plea he did it knowingly and voluntarily. Holman's later contradictory statement that he did not understand the offense he was pleading guilty to presented a credibility question which the trial court was entitled to resolve against him. *Manues v. State*, 232 Ga. App. 454, 455 (501 SE2d 826) (1998). The trial court did not abuse its discretion in denying Holman's motion to withdraw his guilty plea.

3. In his last enumeration of error, Holman complains the trial court erred in allowing into evidence photographs of the dead victim. Holman argues the photographs were not relevant to the charge of armed robbery.

"Any evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant. The trial court has great discretion to determine relevancy and materiality of evidence, and admission is favored in doubtful cases." (Citations and punctuation omitted.) *Crozier v. State*, 263 Ga. 866, 867 (440 SE2d 635) (1994).

Here, the State contends the photographs are relevant because they show a stippling pattern from which experts can tell how close the muzzle was to the victim when the shot was fired, and the angle

at which the bullet entered the victim. Since Holman contended at trial that he did not point the gun at Golden while Jason stole the money, but rather, the gun went off during a struggle with Martin, the stippling pattern and the angle at which the bullet entered the victim are relevant to rebut Holman's statement that he was not threatening the victim with a gun when the robbery occurred. Therefore, the photographs were relevant to a material issue in the case and the trial court did not abuse its discretion in admitting them.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 27, 1999.

*Tony L. Axam*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Keith E. Adams, Assistant District Attorneys*, for appellee.