A99A1385. JENKINS v. THE STATE.
(522 SE2d 678)

JOHNSON, Chief Judge.

Gorman Jenkins was convicted of possession of cocaine with intent to distribute and misdemeanor obstruction of a law enforcement officer. Contrary to his contentions, we find that the evidence

was sufficient to support the convictions, the court properly allowed expert testimony on the issue of his intent to distribute cocaine, and the court did not pressure the jury into reaching a quick decision.

1. Jenkins contends that the trial court erred in denying his motion for directed verdict of acquittal because the evidence was insufficient for a rational trier of fact to find him guilty of the crimes charged beyond a reasonable doubt. He does not elaborate, except to say that "[s]ubstantial questions" were raised regarding "the true nature of the substance alleged to be crack cocaine," chain of custody, venue, identification, and "lack of due diligence by law enforcement."

This court requires that appellants support enumerations of error with argument and citations to authority. Court of Appeals Rule 27 (c) (2). Mere conclusory statements such as those made here are not the type of meaningful argument contemplated by that rule. See generally *Pickens v. State*, 225 Ga. App. 792, 800 (7) (484 SE2d 731) (1997); *Martin v. State*, 179 Ga. App. 551, 555 (8) (347 SE2d 247) (1986). Assuming the enumeration of error was not abandoned, it is nonetheless without merit.

Where, as here, the sufficiency of the evidence is challenged by a motion for directed verdict of acquittal, the proper standard of review is whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offenses. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Redd v. State*, 232 Ga. App. 666 (1) (502 SE2d 467) (1998); *Smith v. State*, 237 Ga. App. 77 (1) (514 SE2d 710) (1999). On appeal, we view the evidence in the light most favorable to support the verdict, and an appellant no longer enjoys a presumption of innocence; moreover, we determine the sufficiency of the evidence and do not weigh the evidence or determine the credibility of witnesses. Id.; *Holman v. State*, 236 Ga. App. 111, 113 (1) (511 SE2d 240) (1999).

So viewed, the evidence shows that narcotics agents received a tip from a reliable informant that a man would be transporting cocaine from Valdosta to the Barwick, Georgia area. He reportedly would be driving a blue Pontiac Grand Am with Georgia tag number 818 ENM.

Police officers staked out an area in Barwick and watched for the car. An officer spotted the car and radioed two other officers stationed one hundred to two hundred yards down the road. The other officers saw the car and activated their blue lights and siren. The suspect stopped his car, and the police parked their car about five to ten feet behind the car. The officers got out of their car and stood next to it. At the officers' request, the suspect, who was the only person in the car, got out and walked to the back end of his car. After waiting there briefly, the suspect turned around and headed back toward the front

of his car. The suspect then reached into his jacket pocket, lowered his pants, threw some objects down, and ran. The officers ran after him, but he escaped. Officers found a jacket on the ground which they identified as the jacket the driver was wearing when he was stopped. The jacket contained a plastic bag with suspected crack cocaine, an identification card with Jenkins' photograph affixed, and cash. The stop of the car and the foot chase occurred in Thomas County, the county alleged in the indictment.

The officer who removed the packaged substance from the jacket testified that he gave the package to one of the other two officers at the scene. That officer testified that he took it to the police department, placed it in a large plastic bag, stapled it, sealed it with tape, labeled it and locked it in his office desk before turning it over to the evidence custodian. The evidence custodian testified that the officer gave her the package and she kept it in a locked safe in her office until she transported it to the crime lab. A crime lab chemist testified that she received the package from the evidence custodian and that the substance contained therein was in fact cocaine.

The two officers positively identified Jenkins in court as the man they stopped that night. Neither officer had any doubt that Jenkins was the suspect. The officers testified that, at the time of the stop, a streetlight and the patrol car's headlights and emergency lights illuminated the area. Jenkins wore no mask or hat, and officers were able to see his face clearly.

A rational trier of fact was authorized to find Jenkins guilty of the crimes charged beyond a reasonable doubt. See *Larkin v. State*, 230 Ga. App. 129, 130 (1) (495 SE2d 605) (1998); *Lester v. State*, 226 Ga. App. 373, 378 (3) (487 SE2d 25) (1997).

2. Jenkins complains that the trial court erred in admitting opinion testimony that the amount of cocaine recovered evidenced an intent to distribute. Specifically, he complains that law enforcement officers should not have been allowed to give such testimony because it went to the ultimate issue in the case. He says the question of whether he intended to distribute the cocaine he allegedly possessed was for the jury to decide. This enumeration is without merit.

"Expert opinion testimony on even the ultimate issue is admissible where the conclusion of the expert is one beyond the ken of the average layman." (Citations and punctuation omitted.) *Davis v. State*, 200 Ga. App. 44, 46 (2) (406 SE2d 555) (1991). The average layman does not necessarily know the amount of crack cocaine one might generally possess for personal use or the amount which might evidence an intent to distribute. Id.

In this case, one of the officers involved in the stop testified that the 17.6 grams of cocaine recovered had a street value of at least $1,700 and that, in his opinion, possessing such a quantity of cocaine

indicated an intent to distribute. He testified that this was a large quantity of drugs, and that a person intending to use the drugs would buy a small amount. The officer had been a narcotics agent for Thomas County for one and one-half years, attended drug enforcement classes, worked on over one hundred drug cases, and was familiar with the distribution of cocaine. He testified that his experience has taught him the difference between a quantity of drugs consistent with mere possession versus a quantity consistent with an intent to distribute.

The second officer testified that, in his opinion, the amount of crack cocaine recovered was consistent with an intent to distribute. Based on his training and experience, this was "a lot" of crack cocaine. The witness had been a police officer for over twenty years, worked drug cases for seven or eight years, underwent drug enforcement training, and saw crack cocaine "thousands" of times.

The third officer similarly testified that, in his opinion, based on the quantity and the large sizes of the pieces, Jenkins intended to distribute the drugs. He explained that drug users will normally have smaller size pieces than those recovered in this case. This officer worked as a Georgia Bureau of Investigation officer for eleven years, participated in undercover drug transactions "hundreds of times," and took classes in drug enforcement.

Because the knowledge of these officers regarding drug use and distribution was beyond that of the average layperson, the trial court did not err in admitting the testimony. See *Davis*, supra; *Bacon v. State*, 225 Ga. App. 326, 329 (483 SE2d 894) (1997); see generally *Tate v. State*, 230 Ga. App. 186, 188-189 (3) (495 SE2d 658) (1998).

3. Jenkins complains that the trial court erred in informing the jury at 12:20 p.m., just before deliberations began, that another case was scheduled to be tried in the same courtroom at 2:00 p.m. He argues that by making that remark, the trial court suggested that the jury had a limited amount of time in which to deliberate. Jenkins points out that the jury returned its verdict at 2:10 p.m.

The trial court did not place any pressure on the jurors to complete deliberations by 2:00 p.m. Indeed, the transcript reveals quite the contrary. After charging the jury on the law, the court noted that it was 12:20 p.m. and that it would allow the jury to decide whether:

> to start deliberating now or come back at 2:00 [p.m.] after lunch and deliberate. We've got another trial starting at 2:00, so we're going to be here anyway. So, if you want to start deliberating now, that's fine. If you want to wait and come back at 2:00 [p.m.] and start your deliberations at that time, that will be fine too.

The trial court informed the jurors that they could wait until 2:00 to *start* deliberating. Moreover, Jenkins has failed to show by the record that the jurors rushed through deliberations so as to comply with an instruction to reach a verdict by 2:00 p.m. This enumeration presents no grounds for reversal. See generally *Harris v. State*, 263 Ga. 526, 528 (6) (435 SE2d 669) (1993); *Williams v. State*, 205 Ga. App. 445, 447-448 (3) (422 SE2d 309) (1992).

*Judgment affirmed. Smith and Eldridge, JJ., concur.*

DECIDED SEPTEMBER 20, 1999.

*Alexander & Vann, Marcus R. Todd*, for appellant.

*J. David Miller, District Attorney, Mark E. Mitchell, Assistant District Attorney*, for appellee.