## A02A2240. PARRIS v. THE STATE.
### (572 SE2d 728)

PHIPPS, Judge.

Jerry Parris and Isaiah Perry were jointly tried on charges of rape and aggravated assault. State's evidence showed that between 1:30 and 2:00 a.m. on October 4, 2001, N. J. was walking down Planter Street in Bainbridge when she was accosted and raped by Parris (whom she knew) and by Perry (whom she did not know). Parris appeals his rape conviction and sentence of life imprisonment. He challenges the sufficiency of the evidence to support the verdict. He bases this challenge on inconsistencies in the version of events given by N. J. in pretrial statements to law enforcement authorities and in her trial testimony. He also complains that he was convicted based on N. J.'s uncorroborated testimony. Finding the evidence sufficient to support Parris's conviction, we affirm.

Immediately after the incidents giving rise to this prosecution, N. J. appeared at the residence of a friend. N. J.'s friend testified that N. J. was very upset and crying, that her jaw was swollen, and that she asked her to call the police because she had been raped. While at her friend's house, N. J. gave statements to City of Bainbridge Police Officer Christopher Medina and City of Bainbridge Police Sergeant Patrick Thomas. She was then taken to the hospital, where she gave a statement to Decatur County Deputy Sheriff Gale Bowyer.

Medina testified that N. J. was "very upset" and

said she was walking down Planter Street. She said whenever the two suspects come up to her and asked her if she was working, she asked what did they mean by her working. Then she said, Isaiah then hit her in the mouth and told her that she talked too much and then she said he made her get down on her knees and pull her pants down. And then at that point, he pushed her to the ground and began the act of rape. . . . She said Jerry was standing by the road acting like a lookout for Isaiah, said — that's all I can remember as far as that.

Thomas testified that N. J.

was crying very heavily and she was saying that she had been raped by two males, one of them had a gun and one of

them had hit her in the head, threw her to the ground, made her take her pants off and they took turns raping her. . . . She said . . . after they hit her, they made her get to her knees, and then removed her clothes. And to the best of my memory, they got on top of her and turned her over where her back was on the ground and then they got on top of her and raped her.

Bowyer testified that N. J. stated that

she was approached by Jerry Parris and [a man] who was later identified as Isaiah Perry. She indicated that she spoke to them, and that Jerry Parris grabbed her up tightly and stated that his homeboy wanted to holler at her. That was . . . Isaiah Perry. And at that point, she said Isaiah whisked off to the side, produced a gun, told her to disrobe, and when she wasn't accomplishing that fast enough, that he struck her in the face and she went down and basically was raped while on her hands and knees.

At trial, N. J. testified,

I was walking down the street and I seen Isaiah and Jerry coming up the other street. . . . And I asked him, I said, what's up? And Jerry came over around and he grabbed me by the shoulder and he said, my boy want to holler at you, you know? I'm tipsy and I'm, like, okay. And so I walked over there towards him. That's when Isaiah grabbed me by the shoulder and the next thing I know, he put the gun to my head. And I can't, I'm trying to remember, I can't remember exactly what he said to me, but I know he told me to come over there. And then he told me to pull down my pants, told me to get on my knees. And then the next thing I know he hit me. After that happened, you know, after he finished doing whatever he had to do, he got — I got up. And then Jerry came around me and started rubbing his penis on my tail trying to make his penis hard. And then he finally made his penis hard and he stuck it in me. . . .

A couple who lived in a house adjacent to the area where N. J. said she was raped testified that, at the time in question, they heard men talking and a woman screaming. Evidence was also presented from which the jury could have found that another man approached the area and was frightened off when he saw Perry in possession of a gun. The emergency room physician who performed a rape examination on N. J. testified that N. J.'s jaw was swollen, that she was intoxi-

cated, and that "she had whitish material on [her] external genitalia as well as internally that was consistent with ejaculate." A forensic biologist with the State Crime Lab testified that a DNA profile of cells on a vaginal swab taken from N. J. matched the DNA profile of a blood sample taken from Parris.

A defense witness, a first cousin of Perry, testified that N. J. confided to her that she had consensual sex with Parris and Perry, that they were supposed to pay her for it but failed to do so, and that this was why she was accusing them of rape.

" 'Conflicts in the testimony of the witnesses, including the (S)tate's witnesses, [are] a matter of credibility for the jury to resolve. (Cits.) As long as there is some (competent) evidence, even though contradicted, to support each fact necessary to make out the (S)tate's case, the jury's verdict will be upheld. (Cit.)' [Cit.]"[1] Here, there is competent evidence to support each fact necessary to make out the State's case of rape against Parris. The evidence, when viewed in the light most favorable to the prosecution, supports the verdict beyond a reasonable doubt.[2]

The General Assembly long ago removed the corroboration requirement from the rape statute.[3] Therefore Parris's corroboration argument has no support in the law and will not be considered by this court.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 17, 2002.

*Ernie M. Sheffield*, for appellant.
*J. Brown Moseley, District Attorney, Ronald R. Parker, Assistant District Attorney*, for appellee.

---

[1] *Grier v. State*, 218 Ga. App. 637, 638 (1) (463 SE2d 130) (1995).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] See *Baker v. State*, 245 Ga. 657, 665-666 (5) (266 SE2d 477) (1980); OCGA § 16-6-1.