## A98A1250. LOVELL v. THE STATE.
### (508 SE2d 771)

McMURRAY, Presiding Judge.

Defendant was charged in a multiple count indictment with theft by conversion (OCGA § 16-8-4) (Counts 1, 2 and 3) by lawfully obtaining funds under an agreement and known legal obligation to apply them to the remodeling of a house for Charles A. Clayton and Mary Ann Clayton, and then converting portions of those funds in amounts exceeding $500 to his own use in violation of the agreement and legal obligation. Defendant was further charged in Count 4 with conversion of payments for real property improvements in violation of OCGA § 16-8-15, for using the proceeds of payments by Charles A. Clayton and Mary Ann Clayton to him for some other purpose than to pay for labor and materials furnished for a specific improvement and also for failure to pay a subcontractor for doors. The defendant was also charged in Count 6 with theft by conversion regarding construction and installation of cabinets in Gloria Powell's house. The jury acquitted defendant of Count 4, conversion of payments for real property improvements and Count 5, theft by conversion regarding installation of hardwood floors in the home of Ralph E. Pounds. But defendant was found guilty of the remaining four counts of theft by conversion. Defendant's motion for new trial was denied and this appeal followed. *Held*:

1. Defendant first enumerates the denial of his motion for directed verdict of acquittal, arguing the State failed to prove the existence of an agreement to make a specific application of funds, and further failed to prove any conversion of funds paid. This challenges the sufficiency of the evidence under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). *Humphrey v. State*, 252 Ga. 525, 526 (1), 527 (314 SE2d 436). The evidence at defendant's jury trial, viewed in the light most favorable to the verdicts, revealed the following:

(a) Defendant entered into a written agreement to act as the gen-

eral contractor for the extensive renovation and remodeling of the home of Charles A. Clayton and Mary Ann Clayton. The initial contract price was $54,000, payable in a series of draws upon the completion of specified milestones. That written agreement obligated defendant to "install all tile in bathroom with tile to be supplied by owner." But Mary Ann Clayton testified that her "architect had designed a shower that wasn't a standard size or shape, and [she and her husband] were just going to tile it [when Mary Ann Clayton] thought about all that mildew. And Surrel is like Corian, it's a solid surface and it's seamless and there's no seams and no grout and [so she] thought it would be wonderful not to have mildew in the shower. So [they] splurged and gave [defendant] the extra money to get the Surrel . . . for the actual wall of the shower." Specifically, she gave defendant a check for $2,073, which was cashed, but Mary Ann Clayton "didn't receive any shower at all." Similarly, Mary Ann Clayton identified another check for $1,720 as "a check [she] wrote to [defendant] on December 9th, '94 for . . . kitchen counter tops, and it was out of the same material. [Defendant] told [them] he was certified to install this material. For solid surfacing like Corian and Surrel . . ., not just anybody can put it in. You have to be a certified installer. So [the Claytons] went with that brand because [defendant] said that he was certified in it." Mary Ann Clayton explained that this $1,720 "was extra. It was not money included in the $54,000." This check was cashed but defendant installed "no kitchen counters whatsoever of any kind." On November 10, 1994, Mr. Clayton gave defendant a check for $3,450 which included "a regular payment plus $750 for a porch roof and flooring which [the Claytons] never got." The extra money was earmarked for "tongue and groove on the [porch] ceiling and the floor."

There are additional examples where defendant took money from the Claytons for specific purposes under agreements outside the original written contract, and *failed to apply the funds to purchase the specified materials*. OCGA § 16-8-4 "applies whether the application or disposition is to be made from the funds or property of another or from the accused's own funds or property in equivalent amount when the agreement contemplates that the accused may deal with the funds or property of another as his own." OCGA § 16-8-4 (a). " ' "(P)roof of conversion vel non lies in the explanation or failure to explain proved discrepancies between amounts received and disbursements going toward the completion of the contract." (Cit.)' *Tchorz v. State*, 197 Ga. App. 185, 186 (397 SE2d 619) (1990)." *Cottrell v. State*, 210 Ga. App. 55, 56 (435 SE2d 272). The evidence in the case sub judice was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to authorize the jury's verdicts that defendant committed theft by conversion as proscribed by OCGA

§ 16-8-4, as alleged in Counts 1, 2, and 3 of the indictment.

(b) Count 6 alleged defendant, having "lawfully obtained funds, to-wit: $3,000.00 . . . under an agreement and known legal obligation, to-wit: construction and installation of cabinets in Gloria Powell's house . . . did knowingly convert said funds, in an amount exceeding $500.00, to be his own in violation of said agreement and legal obligation. . . ." Significantly, this does not allege that defendant accepted the money "under an agreement or other known obligation *to make a specified application of such funds . . .*" (emphasis supplied) as required by OCGA § 16-8-4 (a), and in our view, the evidence does not establish this element of the offense as laid by the State:

Gloria Powell testified that, while her house in Pickens County, Georgia "was under construction, [defendant] came by soliciting work. . . ." In a written agreement, she engaged defendant to do cabinetry work, specifically: "kitchen as per drawings . . . 4 Baths . . . formica Green (Sample to be agreed/on) . . . oak raised panel doors. . . ." Defendant "acknowledged receipt of [Gloria Powell's] check . . . number 1833 for $1500. He acknowledged it here [on the contract], and that was on February the 21st of 1994, that was to buy the material." After five or six weeks, defendant "delivered some shells. [Powell] wouldn't call them cabinets. . . . [Powell was] a little concerned. . . . [Defendant] said everything would come together and it was going to look fantastic. . . . [Powell] said, is this all? Oh, no, [defendant] said. There's a truck coming. [Defendant said he] couldn't [fit] it all in [his] van. . . . But no truck came and no doors ever came and [defendant] never returned phone calls . . . . [Powell] would call [defendant] at least twice a week. . . . First it was his boy was sick. Then his wife's car broke down. . . . [Finally,] a boy approximately 14, 15 years of age . . . came by and was gluing strips of oak paper on this shell. He worked for about a half hour and had to go. . . . He never came back. . . . We were very, very disappointed, disgusted, but wanted very much to work this out. We wanted [defendant] to do the job. Get it done. He never would." Some cabinet shells were delivered, although these were described as "shoddy construction." The Powells were subsequently "notified that [defendant] was going through bankruptcy . . ." when they were listed as creditors.

Defendant's written agreement with Gloria Powell does not obligate defendant to apply any portion of the contract price to specific materials of identifiable quality, such as Corian counters or oaken shelving, and Gloria Powell's testimony likewise is inadequate on this point. Although she testified her first check for $1,500 was intended to be applied to materials, the contract recites "1500 to begin . . . 1500 after casework is delivered [and the final] 2000 after

doors hung." There simply is no evidence that defendant failed to apply funds in a manner specified in any agreement. Rather, the evidence shows that defendant did deliver materials to the Powells' residence. Further, there is no evidence as to the value of the materials delivered. Consequently, the evidence is not sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to authorize the jury's verdict that defendant committed theft by conversion as alleged in Count 6 of the indictment, as it merely shows that defendant failed to perform his contract to deliver cabinets. *Myrick v. State*, 210 Ga. App. 393 (436 SE2d 100). See also *Hill v. State*, 198 Ga. App. 1 (1), 2 (401 SE2d 48) (whole court).

2. Next, defendant contends the trial court erred in sentencing defendant on multiple counts of the indictment (Counts 1, 2, and 3), arguing these constituted but a single series of continuous conversions. We disagree.

"The general rule is that when individual acts are prohibited, each act is punished separately, no matter how close they may be in time to each other. [Cits.]" *Pryor v. State*, 238 Ga. 698, 699 (1) (234 SE2d 918). In the case sub judice, defendant committed three prohibited acts of theft by conversion, based on three separate failures to apply three separate payments to the purpose specified for each such payment. " 'Under the evidence, [three] sequential but entirely separate crimes were committed against the same victim[s] and a conviction and separate sentence for [each crime] was authorized. (Cit.)' *Stroud v. State*, 193 Ga. App. 82, 83-84 (4) (387 SE2d 37) (1989)." *King v. State*, 209 Ga. App. 529, 532 (4) (433 SE2d 722). Compare *Montes v. State*, 262 Ga. 473, 474 (1) (421 SE2d 710).

3. For the reasons discussed in Division 1 (a) above, defendant's three convictions for theft by conversion as alleged in Counts 1, 2, and 3 of the indictment are affirmed. But for the reasons discussed in Division 1 (b) above, defendant's conviction for theft by conversion as alleged in Count 6 of the indictment is reversed on the general grounds.

*Judgment affirmed in part and reversed in part. Blackburn and Eldridge, JJ., concur.*

DECIDED NOVEMBER 5, 1998.

*Jeffrey L. Floyd*, for appellant.
*Roger Queen, District Attorney*, for appellee.