## A99A0090. SMITH v. THE STATE.
(514 SE2d 710)

JOHNSON, Chief Judge.

A jury found Jerry Smith guilty of homicide by vehicle in the second degree and passing in a no-passing zone. Smith appeals from the judgment of conviction entered upon the jury's verdict. He contends the trial court erred in failing to grant his motion for directed verdict of acquittal because the evidence was insufficient to allow a rational trier of fact to find him guilty beyond a reasonable doubt.

1. Where, as in this case, sufficiency of the evidence is challenged by a motion for directed verdict of acquittal, the proper test is the reasonable doubt test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Wilburn v. State*, 199 Ga. App. 667 (1) (405 SE2d 889) (1991). On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines the sufficiency of the evidence, and may not weigh the evidence or determine the credibility of witnesses. See *Hill v. State*, 207 Ga. App. 65, 66 (1) (426 SE2d 915) (1993).

There were contradictions in the evidence presented to the jury, including conflicts in the testimony of the only two survivors of the collision, Smith and a passenger in the other vehicle. This Court must view the evidence in a light most favorable to support the jury's

verdict. When so viewed, the evidence at trial shows Smith had driven tractor-trailer type trucks for 24 years. During the eight years preceding the collision at issue, he had driven the route along which the collision occurred about four thousand times. The collision occurred in the early morning hours. It was dark and the weather was clear. Smith was hauling a load weighing approximately 77,000 pounds. The collision occurred on a two-lane highway in a heavily wooded area. The road was straight. The speed limit was 55 mph.

As Smith was driving along the highway, he observed a car ahead in the distance. As he approached the car, he noticed that its brake lights flickered on and off. The car moved into a left-turn lane and then, without signaling, abruptly changed lanes, pulling back into Smith's lane of travel. At the time, the truck was about 100 feet behind the car. The car proceeded down the highway, changing speeds somewhat erratically. Smith concluded that the occupants of the car were looking for a road, testifying that he fell back because his truck was fully loaded and he did not want to get too close to the car.

The car crested a hill, and Smith momentarily lost sight of it. As Smith's truck crested the hill, he saw the car about 300 feet ahead with its brake lights on. By Smith's estimate, the car was moving between five and ten mph and displayed no turn signal.

Immediately prior to the collision, Smith's truck was traveling between 30 and 35 mph. Smith decided to pass the car because, in his opinion, it was the safest thing to do considering the type of load he was hauling. He believed an effort to stop would cause the load to move forward and might cause his truck to jackknife. Smith believed he had time to think and to react. As he started to pass the car, and by his estimate was about 15 to 20 feet from it, Smith saw the blink of a turn signal. The car made a turn to the left, and Smith slammed on his brakes. The right front of Smith's tractor struck the left side of the car. The driver of the car was killed.

Smith testified that at the time of the collision, he was not aware that there was an intersecting road on the left side of the highway. The side road was a narrow dirt road, and Smith's view of it was obstructed by trees. Although there was a double yellow centerline on the highway at the point of impact, Smith testified he did not see it because he was watching the victim's car and checking for oncoming traffic.

At the scene of the collision, Smith gave a handwritten statement to the investigating officer. This statement was inconsistent with his trial testimony in several important respects. For example, it did not mention that Smith lost sight of the car as it crested a hill moments before the collision. He stated that when he saw the car begin to stop, he did not know what it might do. He stated he decided

to enter the left lane because there was no other vehicle in the area, and he did not want to cause a rear-end collision. He stated that as he started to go around the car, the driver gave a left turn signal and the car began its left turn just as the turn signal started to blink. He stated that the car was in the left lane before he could do anything.

The passenger in the car testified that he and the driver were lost and were looking for a place to turn around. They slowed when they thought they were nearing their turn. When they saw the side road, the driver slowed and gave his signal as he began to turn. Neither the driver nor the passenger was aware that a truck was behind them.

2. OCGA § 40-6-393 (b) is the homicide by vehicle in the second degree statute. A person commits this offense when he violates one or more of the provisions of Title 40 of the Official Code of Georgia where such violation is the cause of the death. As the crime of homicide by vehicle is accomplished without criminal intent, the statutory violation results from "a joint operation of an act or omission to act and intention or criminal negligence." OCGA § 16-2-1; *Conyers v. State*, 260 Ga. 506, 509 (6) (d) (397 SE2d 423) (1990).

In this case, the indictment alleges that Smith committed vehicular homicide by violating OCGA § 40-6-46, passing in a no-passing zone, thereby causing a death. OCGA § 40-6-46 is a traffic safety statute. This Court has held the violation of such a traffic safety statute regulating the use of highways does not constitute criminal negligence unless such violation is intentional, wilful, or wanton, or unless the violation, though unintentional, is accompanied by recklessness or is committed under circumstances from which probable death or injury to others might be reasonably anticipated. See *Abernathy v. State*, 191 Ga. App. 350, 351 (2) (381 SE2d 537) (1989).

When read together, OCGA §§ 40-6-46 (c) and 40-6-40 (a) (2) provide that there is no violation of the no-passing zone statute when an obstruction exists making it necessary to drive to the left of the center of the highway, provided that any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard. See OCGA § 40-6-40 (a) (2).

It is well established that a motor vehicle may be such an obstruction when it is operated on a public road in a manner which could not be generally or reasonably anticipated, taking into account all of the circumstances and conditions present at the time and place, and thereby hinders or impedes the proper travel on the road. See *Smith v. Lott*, 246 Ga. 366, 367 (271 SE2d 463) (1980).

Whether Smith was confronted by an emergency situation and whether the deceased's automobile posed an obstruction in the roadway which would authorize Smith to cross the double yellow center-

line into the left lane were questions for the jury to resolve. *Smith*, supra; *Caffey v. State*, 210 Ga. App. 395, 397 (2) (436 SE2d 102) (1993); *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822 (1) (409 SE2d 524) (1991). Our review of the transcript in a light most favorable to the jury's verdict reveals sufficient evidence from which any rational trier of fact could have found Smith guilty of homicide by vehicle and violation of the no-passing statute beyond a reasonable doubt. *Jackson v. Virginia*, supra.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED MARCH 17, 1999.

*Davis, Zipperman, Kirschenbaum & Lotito, Seth D. Kirschenbaum, Paul A. Griffin*, for appellant.

*T. Joseph Campbell, District Attorney*, for appellee.