### A99A1732. RUSSELL v. THE STATE.
(532 SE2d 137)

MILLER, Judge.

A jury found Paul Russell guilty of possession of marijuana with intent to distribute (three counts), unlawful use of a communication facility, possession of devices to commit a crime, and hindering a law enforcement officer. Russell appeals, enumerating as error the denial of his motion for a directed verdict of acquittal on all counts. He also contends that the trial court erred in imposing separate sentences for each of the possession with intent to distribute counts. We affirm.

1. In six enumerations of error, Russell claims the trial court erred in denying his motion for a directed verdict of acquittal on five counts. "Where, as in this case, sufficiency of the evidence is challenged by a motion for directed verdict of acquittal, the proper test is the reasonable doubt test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)."[1] On appeal we view the evidence in the light most favorable to support the verdict to determine the suffi-

---

ciency of the evidence and do not weigh the evidence or determine the credibility of witnesses.[2]

Viewed in this light, the evidence showed that sometime in February 1998, Russell telephoned Lechelle Milner and asked her if she could receive a package for him that he would later pick up. Milner agreed, picked up the package from Federal Express, and gave it to Russell, who gave Milner $100. On March 12, 1998, Russell telephoned Milner and told her he had another package to be delivered to her home. After finding a notice of attempted delivery on her door, Milner went to Federal Express around noon and retrieved a white box with tape across the top and a label, which she delivered to Russell's apartment. Russell's girlfriend Tee gave Milner another $100.

Meanwhile, Federal Express employees had opened a brown package with a nonexistent address to find more information about the recipient. Upon opening the package, the employees discovered what they believed to be marijuana and called police. Police confiscated the package but returned it to Federal Express on March 12 when they were told a woman arrived to pick it up.

Around 3:00 p.m. on March 12, Russell telephoned Milner a second time and informed her that he had another package that needed to be picked up from Federal Express. Between 3:00 and 3:30, Milner returned to Federal Express with a tracking number Russell had given her to pick up this third package and was arrested. She told police that she was picking up the package to deliver to Russell and subsequently agreed to perform a controlled delivery of the package to Russell's apartment. In a conversation monitored by police, Milner phoned Russell's apartment and asked to speak with him but was informed by Tee that he was not home. Tee inquired whether the package looked as if it had been opened. Milner said it did not and then was told by Tee to deliver the package, while Tee paged Russell. Shortly after 4:00 p.m., Milner delivered the package to the apartment and handed it to Tee, as Russell approached the building. Police then executed a search warrant and attempted to apprehend Russell, who fled. Officers ordered him to stop and chased him between apartments. Russell was carrying a white package as he ran which he threw away before being apprehended. Officers apprehended Russell, held him down, and ordered him to show his hands, but Russell kept his right hand under his body. One of the officers testified that Russell "was trying to roll around and wrestle." After officers pulled his arm from under him they found a pistol in his waistband loaded with hollow point .45 caliber automatic ammunition.

Officers recovered $4,900 in cash, several packages of baggies

---

[2] *Smith*, supra, 237 Ga. App. at 77 (1).

from a kitchen pantry, some electronic scales from a cabinet in a bathroom, a shoe box containing nearly four ounces of marijuana from an entertainment center, and other items. The white package that Russell threw away while fleeing contained what was later determined to be almost three pounds of marijuana, while the brown package used for the controlled delivery, later found behind the apartment, contained 1.57 pounds of marijuana.

(a) Count 4 of the indictment alleged that Russell, between the hours of 8:00 a.m. and 2:00 p.m. on March 12, 1998, received and possessed more than one ounce of marijuana with intent to distribute. Count 5 alleged that he received and possessed more than one ounce with intent to distribute between the hours of 2:00 p.m. and 6:00 p.m. on the same day. Russell contends that the evidence was insufficient to sustain the convictions on these counts. The evidence showed that Russell received two packages on March 12, both later tested to contain more than one ounce of marijuana, one around 12:00 p.m. and another around 4:00 p.m., which was the controlled delivery by police. Thus, under the standard of *Jackson v. Virginia*,[3] the evidence sufficed to sustain the convictions.

(b) Russell argues that the evidence was insufficient to support the conviction on Count 2 of the indictment (possession of more than one ounce of marijuana with intent to distribute between February 18 and March 11, 1998), because there was no testimony as to the contents of the package and no evidence to show that the boxes found at the apartment were those delivered by Milner. Milner's testimony that she picked up and delivered a package to Russell sometime in February is evidence that Russell was in possession of a third package. The shoe box officers found in the entertainment center contained more than one ounce of marijuana but less than that contained in the white and brown packages Milner delivered on March 12. Milner testified to delivering three packages to Russell, one of which was the brown package used for the controlled delivery and another that she described as a "white box with tape across the top and a label on the top," which fits the description of the package Russell threw away as he fled. This authorizes the rational inference that the first package Milner delivered to Russell was the shoe box found by officers at the apartment.

Thus, based on Milner's testimony of the number of packages she picked up and delivered to Russell and the corresponding number found at the apartment, there was sufficient evidence to show that the shoe box and/or its contents were from the first package delivered to Russell by Milner in February. The evidence sufficed to sustain the

---

[3] Supra, 443 U. S. at 307.

conviction on Count 2 of the indictment.

(c) Russell also claims that there were no scientific tests performed to show that the substance in the package was in fact marijuana. An officer trained in identifying marijuana and other substances testified without objection that he performed two chemical tests as well as a visual test on the contents of the three packages found at the apartment and determined that they all contained more than one ounce of marijuana. This is sufficient to establish that each substance was marijuana.[4] And as explained in Division 2, the evidence was sufficient to show that the package delivered by Milner in February is the same as that found in the entertainment center containing marijuana.

2. Russell contends that the State failed to show that electronic scales and baggies were tools commonly used to commit the crime of possession with intent to distribute more than one ounce of marijuana. Under OCGA § 16-7-20, a person commits the offense of possession of tools for the commission of a crime "when he has in his possession any tool, explosive, or other device commonly used in the commission of burglary, theft, or other crime with the intent to make use thereof in the commission of a crime."

An officer on the scene testified that there were several packages of plastic baggies in the apartment and that they are "commonly what marijuana is divided up into." He further testified that electronic scales were also found inside the apartment which are used to weigh certain amounts of marijuana. In his opinion the amount of marijuana found in the apartment was for resale because of "the quantity we have, the way it's packaged, it just bricked up for transport, baggies laid everywhere, large sums of cash, just everything that you need to package and distribute." This testimony is sufficient to establish that electronic scales and baggies found in the circumstances here amounted to tools commonly used in the commission of the crime of possession of marijuana with intent to distribute.[5]

3. Russell contends that the State failed to prove that he used a communication device to obtain possession of more than one ounce of marijuana. He claims that there was no evidence that he had any discussion in furtherance of a drug transaction. OCGA § 16-13-32.3 (a) provides that,

---

[4] See *Smith v. State*, 210 Ga. App. 451, 452 (3) (436 SE2d 562) (1993); compare *Adkinson v. State*, 236 Ga. App. 270, 271 (1) (a) (511 SE2d 527) (1999) (Georgia Bureau of Investigation chemist thought green leafy material was marijuana but did not test it); cf. *Burse v. State*, 232 Ga. App. 729, 730 (1) (503 SE2d 638) (1998) (even if police officers were not formally tendered as expert witnesses, with the proper foundation, their testimony as to their experience in drug enforcement and training is admissible).

[5] See *Cook v. State*, 226 Ga. App. 113, 115 (1) (485 SE2d 595) (1997); cf. *Shook v. State of Ga.*, 221 Ga. App. 151, 152 (470 SE2d 535) (1996).

> it shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing *or facilitating* the commission of any act or acts constituting a felony. . . . [C]ommunication facility . . . includes . . . the telephone. . . .[6]

To establish the element of facilitation, the State must show that Russell's telephone calls to Milner come within the common meaning of facilitate or " 'to make easier' or less difficult, or to assist or aid."[7] Milner testified that the phone calls from Russell were to arrange the pickup of the packages and to instruct her to deliver them to his apartment. The telephone clearly aided in assisting Russell to gain possession of the packages of marijuana.[8] The evidence sufficed to sustain the conviction.

4. The court reduced Russell's initial charge of obstruction to a charge of hindering a law enforcement officer. He argues that his failure to respond immediately to officer's orders was insufficient to sustain the conviction because he did not threaten, speak to, or argue with the officer. Under OCGA § 16-10-24 (a), a person who wilfully and knowingly obstructs or hinders any law enforcement officer in the lawful discharge of his duties is guilty of a misdemeanor. And "[t]o consummate an offense of misdemeanor obstruction, some form of knowing and wilful opposition to the officer sufficient to constitute obstruction or [hindrance] is required, but actual violence or threat thereof is not."[9]

Russell fled, failed to stop when ordered, and refused to show his right hand while held down by police. As "flight from police apprehension has been held to constitute sufficient opposition to support [a misdemeanor] obstruction charge,"[10] certainly the totality of the circumstances in this case sufficed. Whether Russell's conduct had the effect of hindering the officer in making his arrest was for the trier of fact to decide.[11]

5. Russell contends that the court erred in imposing separate sentences for three possession with intent to distribute counts where the charges differed from one another only with respect to the date and time. "The general rule is that when individual acts are prohib-

---

[6] (Punctuation omitted; emphasis in original.) *Hunt v. State*, 196 Ga. App. 694, 695 (3) (396 SE2d 802) (1990).

[7] (Citations omitted.) Id.

[8] See id. at 696.

[9] (Citations omitted.) *Weidmann v. State*, 222 Ga. App. 796, 797 (2) (476 SE2d 18) (1996); see also *Pinchon v. State*, 237 Ga. App. 675, 676 (516 SE2d 537) (1999) (argument, flight, and obstinance are examples of conduct that may satisfy the obstruction element).

[10] (Citations omitted.) *Weidmann*, supra, 222 Ga. App. at 797 (2).

[11] *Pinchon*, supra, 237 Ga. App. at 676.

ited, each act is punished separately, no matter how close they may be in time to each other."[12] Here, the evidence showed that Russell had three separate packages of more than one ounce of marijuana delivered to him on three separate occasions. Under the evidence three sequential but entirely separate crimes were committed, and a conviction and separate sentence for each were authorized.[13]

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 22, 2000 —
RECONSIDERATION DENIED APRIL 7, 2000 — 

*Timothy T. Herring,* for appellant.
*T. Joseph Campbell, District Attorney,* for appellee.

---

[12] (Citations and punctuation omitted.) *Lovell v. State,* 235 Ga. App. 140, 143 (2) (508 SE2d 771) (1998).
[13] See id.