## A02A2324. CHAMBERS v. THE STATE.
### (579 SE2d 71)

ADAMS, Judge.

Bruce Chambers was tried and convicted of possession of marijuana and possession of cocaine with intent to distribute. He appeals, raising two enumerations of error. Because we conclude that there was insufficient evidence establishing that the substance that Chambers possessed was marijuana, we reverse his conviction on that count. We affirm the conviction for possession of cocaine with intent to distribute.

Viewing the evidence in the light most favorable to the verdict, it showed that on May 6, 1999, several officers from the Athens-Clarke County Police Department executed a search warrant at the residence of Michael Cleveland. Defendant Chambers did not live at the residence. The officers used a battering ram to open the door, entered the residence, identified themselves as police officers, and said that they had a search warrant.

When the officers came into the residence, Chambers had his back to the door. Both Officer Graham and Officer Fitzgerald testified that as they entered the room, they saw a cigar in Chambers' mouth fall to the floor. Both officers testified that the cigarette was a "blunt" — a cigarette with the tobacco removed and replaced with marijuana. As Graham moved closer to Chambers, Chambers' hand dropped down and a plastic bag with suspected cocaine rocks fell from his hand; the bag hit the coffee table and then landed on the floor. Graham testified that he clearly saw the bag drop from Chambers' hand. Fitzgerald also recalled seeing the bag drop from Chambers' hand. After Chambers dropped the bag, it was about a foot away from the blunt.

Two other people were seated on a couch across the coffee table from Chambers. Officer Graham testified that neither of those two individuals threw anything onto the floor or across the coffee table. Officer Fitzgerald testified that he saw Chambers' hand make a downward motion and that he saw an object hit the table and then hit the floor. He stated that he did not see the people on the couch make any motions, but he conceded that his observation of the two other people was limited. One of those people had a $20 bill in his hand when the officers came into the residence.

Officer Parker testified that the bag which Chambers dropped on

the ground contained eight rocks of a substance, later determined to be cocaine. He also testified that in addition to the suspected contraband, he seized digital scales, a scanner, and a marijuana smoking pipe from the residence. Parker recalled that there was also a metal crack pipe under the sofa and a can that had been crumpled into a makeshift cocaine smoking device lying nearby on the floor. He testified that there were three loose rocks of suspected cocaine which were found under the couch — no analysis was done on those rocks and no one was charged with possession of that substance. Finally, Parker remembered that $180 was seized from Chambers.

Sandra Butram, a forensic chemist who worked with the Georgia Bureau of Investigation in the Division of Forensic Sciences, testified that she had a bachelor of science degree in biology and chemistry and that she had studied at a university pharmacy school and also completed a six-month training program at the crime lab in the drug identification section. She further testified that she had worked at the crime lab for over three years. The court qualified Butram as an expert regarding analysis for drugs.

Butram first testified that the chemical tests she performed on the contents of the small bag established that the substance was cocaine. She detailed the two processes — the thin-layer chromatography and the gas chromatography, mass spectrometry — that she performed to determine that the suspected cocaine was, in fact, a controlled substance. She testified that after conducting these two scientifically accepted procedures, she had concluded that the substance in this case was cocaine.

Butram then testified she did not perform an analysis on the contents of any leafy material in this case. She further stated that she was unable to identify marijuana without doing scientific tests — that she could neither smell nor look at a substance and determine that it was marijuana. She testified that in order to determine that a suspected substance was marijuana, she usually performed an exam with a microscope and then performed the gas chromatography on the substance. She testified that she performed these procedures on suspected marijuana to assure that a substance actually was marijuana.

Officers Graham and Fitzgerald, who had training and field experience in the identification of marijuana, testified that the cigar seized from Chambers did contain marijuana. Officer Fitzgerald testified that he had completed a week-long class to become certified in the identification of marijuana, and that he had also had additional training in this area. He testified that he had been certified by the State Crime Lab in analyzing marijuana and that he was familiar with the microscopic test and chemical tests used to determine whether a substance was the drug. He testified that he was familiar

with the crime lab requirement that two tests be performed to positively identify marijuana; he conceded that he was familiar both with the microscopic test and the chemical test that would positively identify the substance.

Further, Fitzgerald stated that as part of the drug and vice unit for five years, he had frequently seen marijuana and had positively identified the drug many times. He testified that out of the twenty-six suspected marijuana substances in the previous two years that he had shipped to the crime lab, all had tested positive for marijuana. The court ruled that Fitzgerald could testify as an expert in the identification of marijuana. Chambers objected to this ruling.

Despite the various tests which Officers Graham and Fitzgerald were familiar with, both officers conceded that no tests were performed on the suspected marijuana in this case. Officer Graham conceded that he did not examine the bottom of the suspected substance for "hairs," that he did not perform any chemical tests on the substance, and that he did not use the field test kit to determine if the substance was marijuana. Officer Fitzgerald also conceded that he did not perform these tests. Fitzgerald admitted that there are other substances which look like marijuana.

Chambers testified at trial and denied any involvement with the suspected marijuana or with the cocaine.

1. In his first enumeration of error, Chambers claims that the trial court erred in failing to grant his motion for a directed verdict of acquittal on the marijuana count because the State's evidence did not identify beyond a reasonable doubt that the substance at issue was marijuana. He argues that the only evidence presented that the substance was marijuana was the testimony of Officers Graham and Fitzgerald and the introduction of the substance itself and that without more conclusive proof, his conviction on this count must be reversed. We agree that the evidence presented here did not prove beyond a reasonable doubt that the substance was marijuana.

Critical to our determination here is the rationale of *Adkinson v. State*, 236 Ga. App. 270, 271 (1) (a) (511 SE2d 527) (1999), in which this court reversed a conviction for possession of marijuana because the evidence presented did not prove beyond a reasonable doubt that the substance at issue was marijuana. In *Adkinson* the court allowed testimony regarding the detectives' beliefs that the substance was marijuana; however, no scientifically conclusive evidence was presented. In that case, as here, the GBI chemist had not tested the suspected marijuana, and could not testify beyond a reasonable doubt that the substance was marijuana. In light of this lack of conclusive testimony, the defendant argued that there was insufficient evidence to support his conviction of possession of marijuana with intent to distribute.

In reversing this conviction, the *Adkinson* court noted, "[i]n fact, one narcotics investigator testified that there are a lot of leafy substances that look like marijuana but are not marijuana." Id. at 271. Based upon the existence of this reasonable doubt, the court agreed with Adkinson's argument.

Similarly, in *Phillips v. State*, 133 Ga. App. 392 (210 SE2d 858) (1974), this court reversed defendant's conviction for marijuana possession, concluding that the expert opinion evidence was insufficient to exclude the reasonable hypothesis that the alleged marijuana plants at issue in that case could have been another type of hemp plant. In *Phillips*, the state's expert from the crime laboratory testified "that many other hemp plants and marijuana have similarities, look alike, and that the only way the crime laboratory can determine whether or not a growing plant contains marijuana is by a chemical analysis." Id. at 393. Again, this analysis demonstrated that reasonable doubt existed in the case.

Similarly, in *Fuller v. State*, 256 Ga. App. 840, 843 (3) (570 SE2d 43) (2002), the defendant argued that the trial court should have granted his motion for directed verdict on the marijuana possession charge because there was no positive identification of the seeds found in his coat pocket as marijuana. At trial, the arresting officer had given his opinion that the seeds at issue were marijuana because of their shape, color, and smell. Nonetheless, the police investigator whom the state offered as an expert on identifying marijuana stated that he could not identify the seeds with certainty. Accordingly, upon Fuller's objection, the trial court excused the witness. On appeal, this court concluded that the evidence was insufficient to exclude every reasonable hypothesis except that the seeds were marijuana and reversed the conviction for possession of marijuana based on possession of these seeds. Id. at 844.

In this case, we also conclude that Chambers' conviction for possession of marijuana must fail because in the absence of conclusive testimony the evidence failed to exclude the reasonable hypothesis that the substance here was not marijuana. In other words, given the testimony in this case, the evidence was insufficient to convict Chambers of the marijuana offense.[1]

We reject the State's argument that *Atkinson v. State*, 243 Ga. App. 570 (531 SE2d 743) (2000), should control this case. In *Atkinson*, this court determined that there was sufficient evidence to support Atkinson's conviction for possession of marijuana, despite the absence of a scientific test of the suspected drug. In reaching this con-

---

[1] In reaching this conclusion, we also note that this case is distinguishable from cases like *Russell v. State*, 243 Ga. App. 378, 381 (1) (c) (532 SE2d 137) (2000), in which the testifying police officers performed two chemical tests on the suspected substance.

clusion, the court noted that expert testimony was not necessary to identify a substance, that the record established that the officers had extensive training in the narcotics field, and that the trial court was within its discretion in permitting the officers to give their opinion that the substance in question was marijuana. Id. at 572. The *Atkinson* court quoted the unequivocal testimony of one of the police officers who had received extensive training regarding the identity of marijuana. Id. at 573. The *Atkinson* court then determined that other circumstances — the presence of drug paraphernalia, such as hemostats, pipes, rolling papers and partially smoked cigarettes, and crack pipes and other cocaine paraphernalia — supported the verdict. Id. at 573.

Unlike the conclusion the court reached in *Atkinson*, in this case we find that the evidence did not exclude reasonable doubt. Here, the evidence showed that in the absence of conclusive, scientific tests, the possibility remained that the substance at issue was *not* marijuana. For this reason, we cannot affirm the marijuana possession conviction.

The result in this case comports with the statutory framework of the Georgia Controlled Substances Act. The crimes relating to the possession or sale of marijuana are very specifically set forth in the Georgia Controlled Substances Act, OCGA § 16-13-20 et seq. Under OCGA § 16-13-21 (16) marijuana is specifically defined as:

> all parts of the plant of the genus Cannabis, whether growing or not, the seeds thereof, the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include samples as described in subparagraph (P) of paragraph (3) of Code Section 16-13-25 and shall not include the completely defoliated mature stalks of such plant, fiber produced from such stalks, oil, or cake, or the completely sterilized samples of seeds of the plant which are incapable of germination.

OCGA § 16-13-25 (3) (P), which is specifically excluded from the definition of "marijuana" is defined as:

> (3) Any material, compound, mixture, or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers (whether optical, position, or geometrics), and salts of isomers, unless specifically excepted, whenever the existence of these salts, isomers, and salts of isomers is possible within the specific chemical designation: . . . (P) Tetrahydrocannabinols which shall

include, but are not limited to: (i) All synthetic or naturally produced samples containing more than 15 percent by weight of tetrahydrocannabinols; and (ii) All synthetic or naturally produced tetrahydrocannabinol samples which do not contain plant material exhibiting the external morphological features of the plant cannabis.

Given the exceedingly specific and scientific definition of this drug, the instances in which the State could exclude reasonable doubt without performing conclusive, scientific tests on the suspected marijuana would be very rare.

2. Secondly, Chambers claims that the trial court erred in failing to grant his motion for a directed verdict of acquittal on the charge of possession with intent to distribute cocaine because the evidence, which was circumstantial, failed to exclude the reasonable theory that the bag containing the cocaine could have been tossed by the other people in the room. He contends that the testimony of Officers Graham and Fitzgerald left open this possibility.

We disagree. Based on the evidence presented at trial, we conclude that a rational trier of fact could find from the evidence adduced at trial proof of Chambers' guilt of the crime of possession of cocaine with the intent to distribute beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed in part and reversed in part. Ruffin, P. J., and Barnes, J., concur.*

DECIDED MARCH 3, 2003.

*Vicki E. Carter*, for appellant.
*Kenneth W. Mauldin, District Attorney, Julayaun M. Waters, Assistant District Attorney*, for appellee.