**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**October 9, 2012**

# In the Court of Appeals of Georgia

A12A1151. KING v. THE STATE.

DILLARD, Judge.

Following a trial by jury, Shala King was convicted of failure to maintain lane, fleeing and attempting to elude, tampering with evidence, and misdemeanor obstruction. On appeal of these convictions, King argues that (1) the jury instructions failed to give the proper guidelines for determining guilt as to misdemeanor obstruction and (2) the evidence was insufficient as to failure to maintain lane, fleeing and attempting to elude, and tampering with evidence. For the reasons set forth *infra*, we affirm King's convictions in part, reverse in part, and remand for resentencing.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record reflects that on the night in question, two Holly Springs police officers were on patrol

---

[1] *See, e.g.*, *DeLong v. State*, 310 Ga. App. 518, 518 (714 SE2d 98) (2011).

in a marked vehicle when they saw King's car make a wide right turn, failing to maintain its lane. They continued to follow King and saw her vehicle drift into the other lane, at which point the officers activated the blue flashing lights on top of the patrol car in an effort to stop King. Nevertheless, King continued driving, passing what were, in the officers' estimation, many safe places to stop her vehicle. As the patrol car followed behind with blue lights flashing, King made several turns down residential streets, and the officers activated the vehicle's siren when it became clear that King was not stopping.

King eventually pulled into a residential driveway after traveling approximately .7 miles, and the officers approached her vehicle from both sides.[2] As they did so, King opened her door and engaged in a verbal confrontation with one of the officers regarding her failure to pull over sooner, and King became agitated, throwing a box of cigarettes into the closest officer's chest. The officer could smell burned marijuana inside King's vehicle and directed her toward the back of the car to determine whether she also smelled of the substance, at which point the officers attempted to detain her. But King physically resisted and ignored the officers' commands that she

---

[2] The driveway belonged to King's friend, whose home was King's destination that night as she drove to deliver a flower and banner from the grave of the friend's mother, whose funeral had taken place earlier in the day.

comply. The struggle that ensued brought King and the officers to the ground, and the officers then noticed that she was chewing something and again noticed a strong odor of burned marijuana on her person. Backup then arrived and assisted in restraining King while she remained on the ground.

Once King was restrained, the officers asked her to open her mouth because they suspected that she had consumed marijuana in an effort to conceal it. They detected a small patch of green leafy substance on her tongue, in her bottom teeth, and inside of her cheeks. A search of her person and vehicle revealed no illegal substances. Thereafter, King was convicted by a jury of the charges enumerated above. This appeal follows.

At the outset, we note that on appeal of King's criminal convictions, "we view the evidence in the light most favorable to the jury's verdict, and [King] no longer enjoys a presumption of innocence."[3] And we neither weigh the evidence nor assess witness credibility, "which are tasks that fall within the exclusive province of the jury."[4] With these guiding principles in mind, we turn now to King's enumerations of error.

---

[3] *DeLong*, 310 Ga. App. at 519-20.

[4] *Id.* at 520 (punctuation omitted).

1. First, King argues that the trial court erroneously charged the jury as to the proper guidelines for determining guilt on misdemeanor obstruction. We disagree.

A person commits the offense of misdemeanor obstruction when he or she "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties."[5] At the charge conference, the trial court indicated that it would incorporate into its misdemeanor-obstruction charge language from *Russell v. State*,[6] in which we recited the statutory language and held that "to consummate an offense of misdemeanor obstruction, some form of knowing and wilful opposition to the officer sufficient to constitute obstruction or hindrance is required, but actual violence or threat thereof is not."[7] King entered no objection to this suggestion. Thereafter, the trial court charged the jury as to the statutory language and that "some form of knowing and willful opposition to the officer is sufficient to constitute obstruction or hindrance of a law enforcement officer," and that "actual violence or threat is not required." After the charge to the jury, King stated that she "had no exceptions."

---

[5] OCGA § 16-10-24 (a).

[6] 243 Ga. App. 378 (532 SE2d 137) (2000).

[7] *Id.* at 382 (4) (punctuation omitted).

4

Under OCGA § 17-8-58, "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate."[8] But the failure to so object precludes "appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects the substantial rights of the parties."[9] In such cases, as our Supreme Court has explained, "the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings."[10] And because King failed to object to the jury instructions at trial, our review is limited to consideration in this regard.[11]

Having so reviewed the trial court's instruction as to misdemeanor obstruction, we determine that King has failed to overcome the high hurdle of establishing plain

---

[8] OCGA § 17-8-58 (a).

[9] OCGA § 17-8-58 (b).

[10] *Alvelo v. State*, 290 Ga. 609, 615 (5) (724 SE2d 377) (2012) (punctuation omitted).

[11] *See* OCGA § 17-8-58 (b); *see also White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012); *State v. Kelly*, 290 Ga. 29, 31-32 (1) (718 SE2d 232) (2011).

error.[12] Although the trial court's instruction differed slightly from the language set forth in *Russell*, the instruction was not obviously erroneous nor likely to have affected the outcome of the proceedings because the trial court correctly instructed the jury as to the statutory elements of obstruction—namely, that a person is guilty of misdemeanor obstruction when he or she "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties . . . ." And when a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, "a reviewing court will not disturb a verdict amply authorized by the evidence."[13]

2. Next, King challenges the sufficiency of the evidence as to her convictions for failure to maintain lane, fleeing and attempting to elude, and tampering with evidence. We will address each of these contentions in turn.

(a) *Failure to Maintain Lane.* OCGA § 40-6-48 (1) provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be

---

[12] *See Kelly*, 290 Ga. at 32 (1) n.2 ("[P]arties should be advised that the hurdle to establishing plain error is high . . . .").

[13] *Daniel v. State*, 296 Ga. App. 513, 518 (3) (675 SE2d 472) (2009) (punctuation omitted).

moved from such lane until the driver has first ascertained that such movement can be made with safety . . . ." At trial, the officers testified that King failed to maintain her vehicle within a single lane when making a wide right turn and then again after completing the turn. The jurors were also shown a video from the officers' patrol car showing the maneuvers made by King's vehicle. This evidence was sufficient to sustain the jury's verdict.[14]

(b) *Fleeing and Attempting to Elude.* Pursuant to OCGA § 40-6-395 (a), it is "unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop." The officers testified at trial that King traveled .7 miles before bringing her vehicle to a stop after they engaged the emergency lights and siren on the patrol car, passing a number of safe locations to stop. King testified in her own defense and explained that her failure to stop was due to a spotlight the officers shined on her car, which made it impossible for her to see. Nevertheless, "[i]t was for the jury to determine the

---

[14] *See Harris v. State*, 272 Ga. App. 650, 651 (613 SE2d 170) (2005) (noting that there was sufficient evidence of failure to maintain lane when officer "observed that [the defendant] was failing to maintain his lane in that the passenger side tires of the vehicle would break the double white lines of the lane").

7

credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence,"[15] and the evidence was sufficient to sustain the jury's guilty verdict on this count.[16]

(c) *Tampering with Evidence.* A person commits the offense of tampering with evidence when he or she "with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, . . . knowingly destroys, alters, conceals, or disguises physical evidence or makes, devises, prepares, or plants false evidence."[17] King was charged with committing this offense by knowingly destroying physical evidence, "to wit: alleged

---

[15] *Wilkins v. State*, No. S12A0658, 2012 WL 3888186, at *1 (1) (Ga. Sept. 10, 2012) (punctuation omitted).

[16] *See Dixson v. State*, 313 Ga. App. 379, 383-84 (3) (721 SE2d 555) (2011) (sufficient evidence when defendant failed to stop after officer "activat[ed] his blue light, . . . bumped his siren several times during the pursuit, and eventually activated his siren" (punctuation omitted)); *Weir v. State*, 257 Ga. App. 387, 388 (571 SE2d 191) (2002) (sufficient evidence when defendant continued to drive .5 miles to his apartment complex before stopping).

[17] OCGA § 16-10-94 (a). The statute further provides that "[e]xcept as otherwise provided in . . . subsection [(c)], any person who violates subsection (a) of this Code section involving the prosecution or defense of a misdemeanor shall be guilty of a misdemeanor." OCGA § 16-10-94 (c).

illegal drugs, said evidence involving the prosecution of the offense of possession of marijuana, with intent to prevent the apprehension of herself."[18]

After the struggle between King and the officers, the video of the traffic stop shows King on the ground, straddled by one officer for a lengthy period of time as they waited for backup to arrive. During the investigation that ensued after King was handcuffed and restrained, she complied with an officer's request that she open her mouth, and the officer testified that he detected a small patch of green leafy substance on her tongue, in her bottom teeth, and inside of her cheeks. The video shows King complying with the officer's request, the officer exclaiming that marijuana residue was in her mouth and having another officer look inside, and King denying that she consumed marijuana and protesting against repeated inquiries as to how much marijuana she had consumed. A search of her person and vehicle revealed no illegal substances or drug paraphernalia. At trial, King again denied possessing or consuming any marijuana and explained that any substance in her mouth was the result of the struggle with police on the ground.[19]

---

[18] Although the State also charged King with possession of marijuana (less than one ounce), that charge was dropped prior to trial.

[19] King also testified that the sweatshirt, which officers testified smelled like burned marijuana, did not belong to her and had been borrowed from her cousin

The officers who testified both described their training in drug detection and identification, and their familiarity with burned and fresh marijuana. The first officer testified that the substance in King's mouth looked consistent with fresh marijuana and that he did not "think to attempt to recover it" from her mouth because he "didn't know that she wouldn't bite down on [his] fingers . . . ," and that King was not subjected to a blood test. The second officer also testified that the substance in King's mouth was consistent with marijuana in that it was "a green leafy substance, dark in color" but "chewed up, so it was all separated." The officer stated that it was not possible that the substance was food because it looked consistent with marijuana, which he had seen chewed up before. And when the State asked if he was "100 percent certain" that the substance was marijuana, he said that he was. Nevertheless, he admitted that there are common substances that look like marijuana. He also testified that he did not retrieve any of the substance from King's mouth, because he "didn't want to get [his] finger bit off" when King was "upset" at the time, and that no blood test was sought.

---

earlier in the evening. The video of the stop shows her making this same claim on the night in question.

Neither party cites to Georgia law substantially similar to this case, and our research has returned nothing to suggest that the circumstantial evidence presented by the State is sufficient to sustain King's conviction. Indeed, the facts of the case *sub judice* greatly differ from cases in which we (and courts in other jurisdictions) have sustained convictions for tampering with suspected drug evidence when other facts suggested that the substance was physical evidence that was destroyed with the "intent to prevent the apprehension . . . of any person or to obstruct the prosecution or defense of any person,"[20] *e.g.*, the officers witnessed the defendant place the substance in his mouth when he became aware of their presence, drug paraphernalia was recovered, the defendant refused to expel the substance from his mouth, and the illegal substance was recovered.[21]

---

[20] *See* OCGA § 16-10-94 (a).

[21] *See Jackson v. State*, 306 Ga. App. 33, 34 (1) (701 SE2d 481) (2010) (officers entered room and saw defendant stuffing bag of marijuana into his mouth, and bag was retrieved after defendant was subdued); *Dulcio v. State*, 297 Ga. App. 600, 601 (677 SE2d 758) (2009) (as officers approached, defendant ripped open bag and shoved contents into his mouth; defendant vomited up cocaine and officers recovered plastic bag that contained substance and other bags of cocaine); *Phillips v. State*, 242 Ga. App. 404, 404-05 (530 SE2d 1) (2000) (sufficient evidence for jury to infer that defendant attempted to destroy cocaine when officers saw her standing near sink with water and disposal running, she told officers that cocaine was in the sink, and officers recovered a piece of plastic bag with cocaine residue); *Parrish v. State*, 182 Ga. App. 247, 247, 250 (5) (355 SE2d 682) (1987) (when officers arrived

11

on property, they observed twelve 5-foot tall marijuana plants and instructed defendant not to destroy plants, but plants had been pulled and only a few leaves were found when officers returned); *see also McKenzie v. State*, 632 So2d 276, 276-77 (Fla. Dist. Ct. App. 1994) (after officers approached and said defendant was under arrest for possessing suspected rock of cocaine, defendant placed rock in his mouth, refused to expel it, chewed, and swallowed ); *State v. Childress*, No. 24345, 2009 WL 388215, at *2-3 (Ohio Ct. App. 2009) (after officers arrived to execute search warrant, defendant told them he needed to be hospitalized because he swallowed methamphetamine, repeated the assertion at the hospital, and exhibited symptoms of meth ingestion); *State v. Hollis*, No. 2004CA00207, 2005 WL 724577, at *1, 3-4 (III, IV) (Ohio Ct. App. 2005) (during course of arrest, officer saw defendant take small plastic bag from pocket and swallow it, and defendant later admitted to swallowing crack cocaine and smoking crack prior to arrest); *Commonwealth v. Morales*, 669 A2d 1003, 1004-06 (Pa. Super. Ct. 1996) (defendant observed various buyers hand defendant money in exchange for blue glassine packets of suspected heroine, and when officers began to pursue defendant, he placed a blue packet in his mouth; defendant refused to remove from mouth and instead swallowed); *Harris v. State*, No. 12-07-00279–CR, 2008 WL 2814879, at *1 (Tex. App. 2008) (defendant admitted to officers that he had a marijuana "roach" in mouth, officers observed green leafy substance consistent with marijuana, and defendant chewed and swallowed substance); *Nichols v. State*, No. 05-03-01224-CR, 2004 WL 1447706, at *1-2 (Tex. App. 2004) (sufficient evidence of tampering when drug paraphernalia was found in defendant's car and, during subsequent investigation, defendant initially refused to open mouth, officers saw small plastic bag inside, and defendant swallowed bag when ordered to expel); *Lewis v. State*, 56 SW3d 617, 619-20, 624-26 (Tex. App. 2001) (during traffic stop, officers saw defendant chew small plastic bag; defendant refused to expel item from mouth and continued to chew, but officers eventually recovered, by force, white residue and a bag containing green leafy substance, and hospital removed additional bag). *Cf. Taylor v. McDonough*, No. 3:05cv135/RV/EMT, 2007 WL 189389, at *3-5 (N.D. Fla. 2007) (officer stopped vehicle, asked defendant if he had anything in his mouth, and defendant began to swallow hard, officer grabbed defendant and saw rock of cocaine in mouth, and defendant swallowed rock; defendant's saliva tested positive for crack cocaine); *Smart v. State*, No. A-8336, 2003 WL 122456, at *1-2 (Alaska Ct. App. 2003) (although sufficiency not at issue,

Here, although the officers testified that they smelled burned marijuana on King's person and that the substance in King's mouth was consistent with raw or fresh marijuana, the officers did not see King place the substance in her mouth, did not attempt to recover the substance, did not command King to remove the substance, did not test King's blood or urine for marijuana, and did not recover any drugs or drug paraphernalia from her person or vehicle.[22] Additionally, the videotaped stop

affirming conviction for tampering when defendant grabbed plastic baggie from officer, swallowed it, told officer he had ingested heroine, was treated for potential overdose, and urine tested positive for consumption of amphetamines, cocaine, and heroine derivatives); *State v. Jennings*, 666 So2d 131, 132 (Fla. 1995) (reversing dismissal of tampering charge when defendant threw suspected rocks of cocaine into his mouth and swallowed them after law enforcement shouted "police" and approached); *Thomas v. State*, 726 So2d 369, 370 (Fla. Dist. Ct. App. 1999) (although sufficiency not at issue, affirming conviction for tampering when officers stopped car and defendant placed suspected rock of cocaine in his mouth and washed it down with a beer); *Bridges v. State*, No. 08-01-00462-CR, 2003 WL 21357551, at *2 (Tex. App. 2003) (finding, in context of probation revocation, that State showed tampering by preponderance of the evidence when, *inter alia*, officer suspected defendant had substance in his mouth during detention, defendant appeared to swallow substance when officer asked him to open mouth, defendant spit in patrol car, and saliva tested positive for cocaine).

[22] *See supra* note 21. We are unconvinced by the State's argument that hand gestures King made from her vehicle support the conviction for tampering with evidence. Both officers testified that King waved from her window during the pursuit. One interpreted the gesture as a dismissive wave for the officers to leave her alone and said he assigned no meaning to the fact that her hand faced downward at one point, though he conceded it was a possibility that she could have disposed of something. However, when he returned to the areas where King's hand came out of

13

shows King repeatedly complying with the officer's request that she open her mouth

for inspection with a flashlight.

The State's only evidence was the officers' testimony that the substance in

King's mouth was consistent with marijuana, but this is insufficient to establish that

fact beyond a reasonable doubt.[23] Without some other evidence to show that the

the window, he did not find anything. The other officer testified that he not know if "the gestures were for me to come around or for me to stop or for me to . . . follow . . . ." On the video of the traffic stop, an officer can be heard indicating that King's hand went out the window to block the side-mirror reflection of the spotlight that the officers were shining onto her vehicle. And at trial, King testified that she motioned out of her window for the officers to follow her, pointing to where she was headed.

[23] *See Chambers v. State*, 260 Ga. App. 48, 52 (579 SE2d 71) (2003) ("[T]he evidence showed that in the absence of conclusive, scientific tests, the possibility remained that the substance at issue was *not* marijuana. For this reason, we cannot affirm the marijuana possession conviction."); *Fuller v. State*, 256 Ga. App. 840, 843 (3) (570 SE2d 43) (2002) (no positive identification that defendant possessed marijuana seeds, and no other drugs or drug paraphernalia were found on defendant's person or in his vehicle); *Adkinson v. State*, 236 Ga. App. 270, 271 (1) (a) (511 SE2d 527) (1999) (reversing conviction for possession of marijuana when, despite opinion testimony that substance was marijuana, "no scientifically conclusive evidence was presented"); *see also Phillips v. State*, 133 Ga. App. 392, 392-94 (210 SE2d 858) (1974). *Compare Dulcio v. State*, 297 Ga. App. 600, 601-02 (1) (677 SE2d 758) (2009) (officer testimony identifying substance as marijuana and defendant's testimony referring to substance as marijuana sufficient); *Willingham v. State*, 296 Ga. App. 89, 90-91 (673 SE2d 606) (2009) (sufficient evidence of possession of marijuana when participant in drug transaction had personal knowledge and testified that bags contained marijuana); *Cargile v. State*, 261 Ga. App. 319, 320 (1) (582 SE2d 473) (2003) (holding that metabolites of marijuana in defendant's urine constituted sufficient circumstantial evidence that defendant possessed marijuana

14

substance in King's mouth was (1) physical evidence and (2) placed there with the intent to prevent her apprehension or prosecution,[24] the State's circumstantial evidence failed to exclude all other reasonable hypotheses except that of guilt, as is required by Georgia law.[25]

Accordingly, we affirm King's convictions for misdemeanor obstruction, failure to maintain lane, and fleeing and attempting to elude; reverse King's conviction for tampering with evidence; and remand to the trial court for resentencing.

---

even though State's witness could not testify beyond a reasonable doubt that substance found in bedroom was marijuana and "no scientifically conclusive evidence was presented to identify the substance"); *Atkinson v. State*, 243 Ga. App. 570, 572-73 (1) (531 SE2d 743) (2000) (although no conclusive scientific evidence established that substance was marijuana, officers' testimony identifying it as such and the discovery of drug paraphernalia was sufficient); *Russell v. State*, 243 Ga. App. 378, 381 (1) (c) (532 SE2d 137) (2000) (sufficient evidence that substance was marijuana when officer testified without objection that "he performed two chemical tests as well as a visual test on the contents of the three packages found at the apartment and determined that they all contained more than one ounce of marijuana").

[24] *See supra* note 21.

[25] *See* OCGA § 24-4-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."); *see also Zamora v. State*, No. S12A0847, 2012 WL 3888405, at *2 (2) (Ga. Sept. 10, 2012).

*Judgment affirmed in part, reversed in part, and case remanded. Ellington, C. J., and Phipps, P. J., concur.*